MCGUIREWOODS LLP
A. BROOKS GRESHAM (SBN 155954)
BETHANY G. LUKITSCH (SBN 314376)
ARSEN KOURINIAN (SBN 271966)
1800 Century Park East
8th Floor
Los Angeles, CA 90067
Telephone: 310.315.8200
Facsimile: 310.315.8210
Email: bgresham@mcguirewoods.com
        blukitsch@mcguirewoods.com
        akourinian@mcguirewoods.com


MCGUIREWOODS LLP
JAMES F. NEALE (Pro Hac Vice)
Court Square Building
310 Fourth Street, N.E., Suite 300
Post Office Box 1288
Charlottesville, VA 22902
Telephone: (434) 977-2582
Facsimile: (434) 980-2263
Email: jneale@mcguirewoods.com

Attorneys for Defendants Ulthera, Inc. and
Merz North America, Inc.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGIA TRYAN and MARILYN ECHOLS, as individuals, and on behalf of other members of the general public similarly situated,

          Plaintiffs,

      v.

ULTHERA, INC., a Delaware corporation; and MERZ NORTH AMERICA, INC., a Delaware corporation,

          Defendants.

CASE NO. 2:17-cv-02036-MCE-CMK

Hon. Morrison C. England, Jr.

**DEFENDANTS ULTHERA, INC. AND MERZ NORTH AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT AND ALTERNATIVE REQUEST TO STRIKE CERTAIN ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date:  January 25, 2018
Time:  2:00 p.m.
Courtroom:  7

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on January 25, 2018, at 2:00 p.m., or as soon thereafter as this matter may be heard in the above-entitled Court, located at 501 I Street, Sacramento, CA 95814, Defendants Ulthera, Inc. and Merz North America, Inc. (together, "Defendants") will and hereby do move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the following claims (or specified portions thereof) alleged in the Complaint filed by Plaintiffs Georgia Tryan and Marilyn Echols (together, "Plaintiffs"): (1) California's Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"); (2) California's False Advertising Act, Business and Professions Code § 17500, *et seq.* ("FAL"); (3) California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.* ("UCL"); (4) all claims alleging that Ultherapy is misrepresented to be FDA cleared; and (5) all claims for monetary damages alleged under the CLRA.

Defendants alternatively request to strike or dismiss references to allegations regarding Ultherapy being FDA cleared (as pleaded in paragraphs 2, 7, 8, 9, 33, 34, 36, 37, 38, 39, 41, 52, 59.d, 66, 70, 71, 91, and 98.d.), if the Court does not partially or completely dismiss the claims to the extent they are based on advertisements referring to Ultherapy as being FDA cleared.

This Motion is based on the following grounds: (1) the CLRA, FAL, and UCL claims are impliedly preempted by the federal Food, Drug, and Cosmetic Act and should be directed to the proper forum—the Food & Drug Administration ("FDA"); (2) the claims should be dismissed to allow the FDA to address Plaintiffs' allegations regarding the use of the phrases "FDA approved" and "FDA cleared" in advertisements; (3) alleged misrepresentations of Ultherapy being FDA cleared are not actionable as a matter of law because Ultherapy is, in fact, FDA cleared; (4) Plaintiffs' pre-suit CLRA notice letter fails to satisfy the requirements of the CLRA and therefore requires dismissal of any CLRA claim for monetary damages; (5) Plaintiffs' claims, which sound in fraud, have not been adequately pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure; and (6) Plaintiffs lack standing to seek injunctive relief because the threat of future injury is neither alleged in the Complaint, nor plausible.

1    This Motion is based upon this Notice of Motion and Motion, the attached Memorandum

2  of Points and Authorities, the Request for Judicial Notice and exhibits attached thereto, all papers

3  and records on file herein, and such other matters as may be presented to the Court at or before the

4  hearing on this Motion.

5  DATED:  November 21, 2017          Respectfully submitted,

6                                                     MCGUIREWOODS LLP

7

8                                                     By:        /s/ A. Brooks Gresham

9                                                                A. Brooks Gresham
                                                               Bethany G. Lukitsch
10                                                             James F. Neale
                                                               Arsen Kourinian
11                                                             Attorneys for Defendants Ulthera, Inc. and Merz
12                                                             North America, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT AND
ALTERNATIVE REQUEST TO STRIKE CERTAIN ALLEGATIONS

1

# <u>TABLE OF CONTENTS</u>

2
**Page**

3
TABLE OF AUTHORITIES ................................................................................... ii

4
MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

5
I.      INTRODUCTION AND FACTUAL BACKGROUND ................................. 1

6
II.     ARGUMENT ............................................................................................. 4

        A.      Legal Standard................................................................................ 4

7
        B.      Plaintiffs' Claims Fail Because They Are Preempted By The FDCA ..................... 6

8
        C.      The Claims Alleged In The Complaint Should Be Dismissed To Allow The
                FDA To Address Plaintiffs' Allegations Regarding The Use Of "FDA

9
                Approved" And "FDA Cleared" In Advertisements................................................. 8

10
        D.      In Any Event, To The Extent Plaintiffs' Claims Are Based On Ultherapy
                Being Misrepresented As FDA Cleared, The Claims Are Barred Because

11
                Ultherapy Is FDA Cleared................................................................................. 8

12
        E.      Plaintiffs' Claims Fail To Satisfy Rule 9(b)'s Heightened Pleading
                Standards ................................................................................................ 10

13
        F.      Plaintiffs' CLRA Claim For Monetary Damages Fails Because The Pre-Suit

14
                Notice Letter Did Not Comply With The Statutory Requirements....................... 14

        G.      Plaintiffs Lack Standing To Seek Injunctive Relief................................................ 16

15
III.    CONCLUSION ................................................................................................ 17

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT AND
ALTERNATIVE REQUEST TO STRIKE CERTAIN ALLEGATIONS

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Federal Cases**

*Algarin v. Maybelline, LLC*,
  300 F.R.D. 444 (S.D. Cal. 2014)................................................................16

*Allen v. Similasan Corp.*,
  12-cv-0376-BTM-WMC, 2013 WL 5436648 (S.D. Cal. Sept. 27, 2013) ...............................15

*Asetek Holdings, Inc. v. Coolit Sys., Inc.*,
  No. C-12-4498 EMC, 2013 WL 12175001 (N.D. Cal. Feb. 1, 2013)....................................5, 9

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ..........................................................................5, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................5

*Bonin v. Provident Life & Accident Ins. Co.*,
  No. C 14-00614 SI, 2014 WL 2527008 (N.D. Cal. June 4, 2014).........................................5, 9

*Buckman Co. v. Plaintiffs' Legal Committee*,
  531 U.S. 341 (2001) ...............................................................................6, 7, 8

*Cattie v. Wal-Mart Stores, Inc.*,
  504 F. Supp. 2d 939 (S.D. Cal. 2007) ................................................................15

*Cetacean Community v. Bush*,
  386 F.3d 1169 (9th Cir. 2004).......................................................................16

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013) ..............................................................................16

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008).........................................................................8

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997)..........................................................................10

*Davidson v. Kimberly-Clark Corp.*,
  873 F.3d 1103 (9th Cir. 2017).......................................................................17

*DeBons v. Globus Medical, Inc.*,
  2:13-cv-08518, 2014 WL 12495351 (C.D. Cal. Aug. 8, 2014) ....................................7

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ................................................................13

*English v. General Elec. Co.*,
  496 U.S. 72 (1990) ........................................................................................6

*Galope v. Deutsche Bank Nat'l Tr. Co.*,
  666 F. App'x 671 (9th Cir. 2016)................................................................11

*Garrison v. Whole Foods Mkt. Grp., Inc.*,
  13-cv-05222-VC, 2014 WL 2451290 (N.D. Cal. June 2, 2014) ................16

*Harris v. Las Vegas Sands L.L.C.*,
  12-cv-10858, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013)......................10

*Hill v. Opus Corp.*,
  841 F. Supp. 2d 1070 (C.D. Cal. 2011)....................................................5, 9

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ....................................................................16

*Ivy Sports Med., LLC v. Burwell*,
  767 F.3d 81 (D.C. Cir. 2014) ...................................................................9, 12

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)..................................................10, 11, 12, 13

*Kowalsky v. Hewlett-Packard Co.*,
  771 F. Supp. 2d 1138 (N.D. Cal. 2010) ......................................................10

*Laster v. T-Mobile USA, Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005) .......................................................14

*Loreto v. Procter & Gamble Co.*,
  515 F. App'x 576 (6th Cir. 2013)...............................................................6, 7

*Los Angeles Cty. v. Davis*,
  440 U.S. 625 (1979) ....................................................................................17

*Luman v. Theismann*,
  647 F. App'x 804 (9th Cir. 2016).................................................................16

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008).......................................................................4

*In re Medtronic, Inc.*,
  623 F.3d 1200 (8th Cir. 2010).......................................................................7

*Meixner v. Wells Fargo Bank, N.A.*,
  101 F. Supp. 3d 938 (E.D. Cal. 2015)..........................................................10

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ....................................................................................16

*Opperman v. Path, Inc.*,
  84 F. Supp. 3d 962 (N.D. Cal. 2015) .................................................................5

*Perez v. Nidek Co.*,
  711 F.3d 1109 (9th Cir. 2013).................................................................6, 7

*PhotoMedex, Inc. v. Iwrin*,
  601 F.3d 919 (9th Cir. 2010).................................................................8, 9

*Russell v. U.S. Dep't of the Army*,
  191 F.3d 1016 (9th Cir. 1999).................................................................17

*Ruszecki v. Nelson Bach USA Ltd.*,
  12-cv-495-L(NLS), 2015 WL 6750980 (S.D. Cal. June 25, 2015)..........................15

*In re Sony Gaming Networks and Customer Data Security Breach Litigation*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) .................................................................10

*Stanwood v. Mary Kay, Inc.*,
  941 F. Supp. 2d 1212 (C.D. Cal. 2012) .................................................................13

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015) .................................................................10

*Van Den Heuvel v. Expedia Travel*,
  No. 2:16-cv-0567-JAM-ACPS, 2016 WL 2928045 (E.D. Cal. May 19, 2016)........................10

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003).................................................................10

**State Cases**

*Outboard Marine Corp. v. Superior Court*,
  52 Cal. App. 3d 30 (1975).................................................................14

**Federal Statutes**

  21 U.S.C. §§ 260k(a), 337(a) .................................................................6
  21 C.F.R. § 807.97 .................................................................2, 6, 7

**State Statutes**

Cal. Bus. & Prof. Code
  § 17200, *et seq.*.................................................................2
  § 17500, *et seq.*.................................................................2

Cal. Civ. Code
  § 1750, *et seq.* ........................................................................................................2
  § 1782 ..................................................................................................................4, 14
  § 1782(a) ...............................................................................................................14

**Rules**

Fed. R. Civ. Proc.
  Rule 9(b) ..............................................................................3, 10, 11, 12, 13, 14
  Rule 12(b)(6) .............................................................................................4, 5
  Rule 12(f) ..............................................................................................5, 9, 18

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT AND
ALTERNATIVE REQUEST TO STRIKE CERTAIN ALLEGATIONS

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Defendants Ulthera, Inc. ("Ulthera") and Merz North America, Inc. ("Merz") (together, "Defendants") hereby submit the following Memorandum of Points and Authorities in support of their motion to dismiss and alternative request to strike the Complaint filed by Plaintiffs Georgia Tryan ("Tryan") and Marilyn Echols ("Echols") (together, "Plaintiffs").

### I.     INTRODUCTION AND FACTUAL BACKGROUND

Ultherapy is a non-invasive procedure performed by independent medical providers using an ultrasound device to reduce the appearance of skin wrinkles.  *See* Request for Judicial Notice ("RJN"), Exh. F, *Ultherapy*, http://www.ultherapy.com.  Defendants do not perform the Ultherapy procedure.  Patients have an opportunity to consult with their physicians regarding the benefits of this procedure, its status with the Food & Drug Administration ("FDA"), concerns they have about government review, safety and efficacy, and whether the Ultherapy treatment is appropriate for their particular goals.

The device used to perform Ultherapy, the Ulthera System, is a Class II ultrasound device which has received multiple clearances by the FDA to be used for the treatment of skin on the neck, under the chin, on the eyebrow, and on the chest.  *See* RJN, Exh. E, *510(k) Summary* (2014), https://www.accessdata.fda.gov/cdrh_docs/pdf13/k134032.pdf.  The FDA does not grant "approval" to Class II medical devices.  Instead, the FDA grants "clearance" to such devices.

The gravamen of Plaintiffs' claims is that Defendants used the terms "approval" and "clearance" interchangeably and/or improperly, which confused Plaintiffs and caused them to purchase Ultherapy treatments from their medical providers or pay more for the treatments than they were actually worth.  *See* Compl. ¶¶ 19, 23.  Plaintiffs do not allege that they purchased Ultherapy from Defendants directly, but instead through intermediary medical providers.  *See id.* ¶¶ 15, 20.  Neither Ulthera nor Merz is alleged to be a medical provider, but instead alleged to be the manufacturer of the Ulthera System used by medical providers to administer Ultherapy.  *See id.* ¶ 33.

The Ulthera System was developed by Ulthera.  *See id.* ¶ 25.  Ulthera was acquired by Merz in July 2014.  *See id.* ¶ 25.  Merz acquired the right to sell the Ulthera System when it

acquired Ulthera, and has taken responsibility for marketing the Ulthera System and Ultherapy since that time.  *See* RJN, Exh. G, Defendants' November 15, 2017 Letter.  Merz currently markets Ultherapy as "the only non-invasive procedure FDA-cleared to lift skin on the neck, under the chin and on the eyebrow [and] to improve the appearance of lines and wrinkles on the chest." RJN, Exh. F, *Ultherapy*, http://www.ultherapy.com.  Before Merz acquired Ulthera, some marketing materials apparently were produced by Ulthera that used the term "FDA approved" to describe the FDA clearances for Ultherapy – such materials are not part of Merz's approved marketing campaign, Merz has attempted and continues to attempt to remove such materials from circulation and, as Merz has advised Plaintiffs, Merz does not plan to market the Ulthera System or Ultherapy as FDA approved.  *See* RJN, Exh. G, Defendants' November 15, 2017 Letter.

Plaintiffs allege that Defendants are engaged in false and misleading marketing practices regarding the Ultherapy procedures.  Compl. ¶ 2.  Their Complaint asserts claims under three California statutes: (1) the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"); (2) the False Advertising Act, Business and Professions Code § 17500, *et seq.* ("FAL"); and (3) the Unfair Competition Law, California Business and Professions Code § 17200, *et seq.* ("UCL").  *See id.* ¶ 4.  Each of these claims is based on purported violations of 21 C.F.R. § 807.97, promulgated by the Federal Food & Drug Administration (the "FDA") pursuant to the Federal Food, Drug, and Cosmetic Act (the "FDCA").  *See id.* ¶ 3.

Plaintiff Tryan alleges that in 2015 she viewed and relied upon a specific, undated marketing brochure alleged and set forth in the Complaint.  *See id.* ¶¶ 15, 16.  Plaintiff Echols alleges that in 2015 she viewed and relied upon unspecified advertisements.  *See id.* ¶¶ 20, 21. Plaintiffs also identify or attach other marketing materials that use the term "FDA approved," which Plaintiffs allege were visible to the public at the time the Complaint was filed, but Plaintiffs do not allege that they read or relied upon them, and, to the extent such materials bear dates, none is dated later than 2013.  *See id.* ¶¶ 7, 16, 41, 45.  While Plaintiffs' counsel has attempted to solicit other potential plaintiffs to join the suit, none has joined this lawsuit to date, and no advertisements that post-date 2013 have been alleged or attached by Plaintiffs.  *See* RJN, Exh. H, *Capstone/Ultherapy Solicitation Website* (2017), http://www.ultherapyinvestigation.com.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT AND ALTERNATIVE REQUEST TO STRIKE CERTAIN ALLEGATIONS

1    After Plaintiffs notified Merz of the existence of such materials, Merz investigated the

2    claims, and subsequently advised Plaintiffs that before Merz acquired Ulthera, Ulthera published

3    marketing materials that used the term "FDA approved" rather than "FDA cleared."  *See* RJN,

4    Exh. G, Defendants' November 15, 2017 Letter.  Plaintiffs do not currently allege any marketing

5    materials created by Ulthera or Merz after 2013 that describe Ultherapy as FDA approved.  Merz

6    also advised Plaintiffs that it has made and continues to make efforts to remove materials from

7    view and/or circulation that contain the term FDA approved, and has represented to Plaintiffs that

8    it does not intend to market Ultherapy or the Ulthera System as FDA approved.  *See id.*

9    In light of the foregoing, Defendants hereby move to dismiss the Complaint in whole, or,

10   alternatively, in part.  First, because each of Plaintiffs' claims rely solely on the FDCA – and thus

11   fall squarely within the purview of the federal government's regulatory enforcement – Plaintiffs'

12   claims are impliedly preempted.  Plaintiffs' claims must be directed to the proper forum – the

13   FDA.  Plaintiffs' impermissible attempt to regulate through litigation should be rejected.

14   Second, Plaintiffs' claims should be dismissed to allow the FDA to resolve the issues

15   presented by Plaintiffs' claims.  Congress has placed the issue of labeling medical devices "FDA

16   approved" or "FDA cleared" squarely within the purview of the FDA.  Accordingly, the doctrine

17   of primary jurisdiction applies and this Court should exercise its discretion and dismiss this case.

18   Third, to the extent the Complaint alleges Ultherapy to be misrepresented as FDA cleared,

19   this claim fails as a matter of law because, in fact, the Ulthera System and Ultherapy *is* FDA

20   cleared for the uses marketed.  Indeed, Plaintiffs' Complaint admits that Defendants received such

21   clearance, and so, to that extent, this aspect of the claims must be dismissed.

22   Fourth, Plaintiffs' allegations sound in fraud, and fail to satisfy the heightened pleading

23   standards of Rule 9(b) of the Federal Rules of Civil Procedure.  Accordingly, Plaintiffs are

24   required to allege particularized facts supporting their contention that they, themselves, relied on

25   specific misrepresentations.  Plaintiff Echols does not allege a specific advertisement that she

26   relied upon, and neither named Plaintiff alleges sufficient factual circumstances to meet the

27   pleading standard.

28   Fifth, Plaintiffs' CLRA claim for monetary damages fails because Plaintiffs did not

1  comply with the pre-suit notice requirements of Civil Code § 1782.  CLRA demand letters place

2  the defendant on notice of the claim, so that the defendant has an opportunity to correct the alleged

3  misrepresentation prior to suit.  Defendants timely requested that Plaintiffs identify the specific

4  advertisements that were misleading, and Plaintiffs' counsel did not provide a single

5  advertisement at issue until shortly before filing the Complaint, and even then, Plaintiffs' counsel

6  failed to inform Defendants of *all* marketing materials Plaintiffs allege violate the CLRA.  Thus,

7  Plaintiffs denied Defendants the opportunity to remediate the purported violations before Plaintiffs

8  filed suit.  *See* RJN, Exhs. C and D.

9      Finally, Plaintiffs lack standing to seek injunctive relief because there is no threat of future

10  injury alleged in the Complaint.  Plaintiffs cannot possibly prove that they will, in the future, rely

11  on the advertisements to their detriment because Plaintiffs allege that they are now aware that

12  Ultherapy is FDA cleared and not FDA approved.  Notably, Plaintiffs have not even alleged that

13  they desire to purchase Ultherapy in the future for an injunction to be necessary.  Further,

14  Defendants have advised Plaintiffs that they are removing from circulation the outdated

15  advertisements that they are aware of, stating that Ultherapy is FDA approved.  Defendants also

16  do not intend to market Ultherapy as FDA approved in the future.  For these reasons, the

17  Complaint is deficient and should be entirely dismissed, or, in the alternative, portions of the

18  Complaint should be stricken or dismissed.

19  ## II.    ARGUMENT

20  ### A.    Legal Standard

21      Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a complaint for

22  "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A court is

23  not required to accept as true allegations of a complaint that are contradicted elsewhere in the

24  complaint or by attachments thereto or matters properly subject to judicial notice.  *See Manzarek*

25  *v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).[1]

26

27  ―――――――――――――――

28      [1] The Court can and should take judicial notice of matters alleged in the complaint, of

1    Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

2    need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

3    to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

4    cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  More

5    specifically, "a complaint must contain sufficient factual matter, accepted as true, to state a claim

6    to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads

7    factual content that allows the court to draw the reasonable inference that the defendant is liable

8    for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Finally, the factual

9    allegations must be enough to raise a right to relief above the speculative level.  *See Twombly*, 550

10    U.S. at 555.  Where a claim is based on an advertisement or marketing piece, the advertisement or

11    piece should ordinarily be recited verbatim or attached to the complaint; it is not enough that the

12    plaintiff generally avers that she relied on something unspecified.  *See Opperman v. Path, Inc.*, 84

13    F. Supp. 3d 962, 976 (N.D. Cal. 2015).

14    Further, if plaintiffs' claims partially fail to the extent they are based on certain allegations,

15    the Court can and should partially dismiss the claims based on the defective allegations.  *See Hill*

16    *v. Opus Corp.*, 841 F. Supp. 2d 1070, 1081 (C.D. Cal. 2011) (rejecting the plaintiffs' argument

17    that "a motion that seeks to dismiss only part of a claim is defective"); *Bonin v. Provident Life &*

18    *Accident Ins. Co.*, No. C 14-00614 SI, 2014 WL 2527008, at *3 (N.D. Cal. June 4, 2014) (partially

19    dismissing claims to the extent based on certain allegations); *Asetek Holdings, Inc. v. Coolit Sys.,*

20    *Inc.*, No. C-12-4498 EMC, 2013 WL 12175001, at *4 (N.D. Cal. Feb. 1, 2013) (same).  However,

21    if the Court deems striking the legally deficient allegations referenced below more appropriate,

22    Defendants alternatively request the Court to strike the allegations under Rule 12(f) of the Federal

23    Rules of Civil Procedure, which permits the Court to "strike from a pleading . . . any redundant,

24    immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

25

26    _____

27    attachments that are referenced in the Complaint, and of matters beyond factual dispute, such as
      pleadings and government records. *See* Concurrently Filed RJN.

28

**B.**     <u>**Plaintiffs' Claims Fail Because They Are Preempted By The FDCA.**</u>

The very heart of Plaintiffs' claims is their contention that Defendants' advertising contravenes 21 C.F.R. § 807.97 which, as Plaintiffs admit, was promulgated by the FDA pursuant to the FDCA.  Compl. ¶¶ 3, 41.  Specifically, Plaintiffs allege that Defendants' use of the phrase "FDA approved" or "FDA cleared" "creates an impression of official approval" and therefore constitutes "misleading and misbranding."  *Id*. ¶ 3.  Stated differently, Plaintiffs are relying entirely on the FDCA to assert state claims under California consumer protection statutes.  Plaintiffs' claims are, therefore, impliedly preempted.

"In the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively."  *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990).  That is, only the Federal Government is authorized to bring suit for non-compliance with the FDCA's substantive provisions.  21 U.S.C. §§ 260k(a), 337(a).  The FDCA's "public enforcement mechanism is thwarted if savvy plaintiffs can label as arising under a state law for which there exists a private enforcement mechanism a claim that in substance seeks to enforce the FDCA."  *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 579 (6th Cir. 2013).  Thus, when a state-law claim is substantively a claim for violating the FDCA, principles of implied preemption necessarily bar such a claim.  *Id*.

In analyzing whether a state law claim is seeking to enforce the FDCA, the Court merely need ask itself whether the claim would exist in the absence of the FDCA.  If it would not, it is impliedly preempted.  *Id*.  (citing *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001)).  In *Buckman*, the plaintiffs claimed that the manufacturer of medical devices made fraudulent representations to the FDA in order to obtain approval.  There, the Supreme Court held that the plaintiffs' state law claims were impliedly preempted by the FDCA because "the existence of [the FDCA] [was] a critical element in their case."  *Id*.

In *Perez v. Nidek Co.*, 711 F.3d 1109, 1111-13 (9th Cir. 2013), the plaintiffs claimed that at the time of their LASIK eye surgery to correct farsightedness, they did not know the FDA had not approved the device for that use.  Although they suffered no injuries, they asserted that had they known of the status of FDA approval, they would not have consented to the surgeries.  *Id*. at

1112.  There, the Ninth Circuit found that the common law claim was "impliedly preempted

because it amounts to an attempt to privately enforce the FDCA."  *Id.* at 1117.  Not only did the

Court recognize a clear absence of cases in which a plaintiff was permitted "to bring suit solely for

failure to disclose lack of FDA approval," but it also described the "narrow gap" through which a

state law claim must fit to avoid preemption: "The plaintiff must be suing for conduct that ***violates***

the FDCA . . . but the plaintiff must not be suing ***because*** the conduct violates the FDCA."  *Id.* at

1120 (citing *In re Medtronic, Inc.*, 623 F.3d 1200, 1204 (8th Cir. 2010)) (emphasis in original).

As discussed herein, Plaintiffs' claims "[do] not squeeze through this gap."  *Id.*

     In relying on both *Buckman* and *Perez*, the Central District of California upheld the

principle that state law claims are impliedly preempted by the FDCA where a plaintiff sues

"***because*** the conduct violates the FDCA."  *DeBons v. Globus Medical, Inc.*, 2:13-cv-08518, 2014

WL 12495351, at *4 (C.D. Cal. Aug. 8, 2014) (quoting *Perez*, 711 F.3d at 1120) (emphasis in

original).  In *DeBons*, the plaintiff alleged claims similar to those asserted here: that the defendant

failed to disclose that a medical device lacked FDA approval.  *Id.* at *1.  Although the plaintiff

argued that his claims were grounded in traditional state law, the Court recognized that the only

allegation in the complaint as to why the product was not safe, effective, or legal was because it

was not FDA approved.  *Id.* at *3.  The claim therefore "exist[ed] solely by virtue of federal

requirements" and was necessarily preempted.  *Id.* (quoting *Buckman*, 531 U.S. at 353).

     Here, Plaintiffs' claims likewise are impliedly preempted by the FDCA.  The sole basis for

Plaintiffs' Complaint is that Defendants allegedly misbranded Ultherapy pursuant to 21 C.F.R. §

807.97.  *See* Compl. ¶¶ 3, 4, 7, 34, 35.  Plaintiffs are therefore "suing ***because*** the conduct violates

the FDCA" and their claims "exist solely by virtue of federal requirements."  *Perez*, 711 F.3d at

1120; *DeBons*, 2014 WL 12495351, at *3.  Stated differently, but for Section 807.97, there would

be no alleged misrepresentation to support Plaintiffs' claims.  *See Buckman*, 531 U.S. at 353

(claim preempted where FDCA's existence was "a critical element" of the plaintiffs' case); *Perez*,

711 F.3d at 1119 (same); *Loreto*, 515 F. App'x at 579 ("were it not for the federal regulatory

scheme the FDCA created, there would have been no fraud that could support the tort claim");

*DeBons*, 2014 WL 12495351, at *3.

7

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT AND
ALTERNATIVE REQUEST TO STRIKE CERTAIN ALLEGATIONS

1    The FDA's occupation of the field is readily apparent by the wealth of regulations and

2  policies concerning clearance for drugs and medical devices.  To find otherwise would render the

3  FDA's regulatory scheme meaningless.  Indeed, this "litigation would exert an extraneous pull on

4  the scheme established by Congress."  *Buckman*, 531 U.S. at 353.  For these reasons, Plaintiffs'

5  claims are preempted and the instant motion to dismiss should be granted.

6  **C.    The Claims Alleged In The Complaint Should Be Dismissed To Allow The FDA To**

7  **Address Plaintiffs' Allegations Regarding The Use Of "FDA Approved" And "FDA**

8  **Cleared" In Advertisements.**

9    The doctrine of primary jurisdiction applies where there is: "(1) [a] need to resolve an issue

10  that (2) has been placed by Congress within the jurisdiction of an administrative body having

11  regulatory authority (3) pursuant to a statute that subjects an industry or activity to a

12  comprehensive regulatory authority that (4) requires expertise or uniformity in administration. . .

13  ."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008) (internal quotation marks

14  and citations omitted).

15    Here, the Complaint relates to Defendants' alleged use of the phrases "FDA approved" and

16  "FDA cleared" in advertisements.  This falls squarely within the FDA's regulatory jurisdiction.

17  Moreover, this case presents "policy questions that should be addressed in the first instance by the

18  agency with regulatory authority over the relevant industry rather than by the judicial branch."  *Id*.

19  at 1114.  Given the breadth of the FDA's existing regulations and policies concerning these issues,

20  there can be no doubt that uniformity is required.  Accordingly, this Court should exercise its

21  discretion and dismiss this case based on the FDA's primary jurisdiction to determine the issues

22  presented in the Complaint.

23  **D.    In Any Event, To The Extent Plaintiffs' Claims Are Based On Ultherapy Being**

24  **Misrepresented As FDA Cleared, The Claims Are Barred Because Ultherapy *Is* FDA**

25  **Cleared.**

26    The Complaint alleges that by marketing Ultherapy as "FDA cleared," Defendants

27  "fail[ed] to disclose and misrepresent[ed] the true nature of the FDA's clearance of Ultherapy."

28  Compl. ¶¶ 71, 91.  The FDCA, as amended by the Medical Device Amendments of 1976

8

("MDA"), imposes various requirements upon medical devices. *PhotoMedex, Inc. v. Iwrin*, 601 F.3d 919, 924 (9th Cir. 2010). A manufacturer of a "Class II" device, such as the Ulthera System at issue in Plaintiffs' Complaint, need only submit a "premarket notification" to the FDA in accordance with the "510(k) process." *Id*. at 925 (explaining that Class II devices need only comply with 510(k) process). The FDA does not grant "approval" to Class II devices, because they pose fewer risks than Class III devices. *See Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 83 (D.C. Cir. 2014). Instead, the FDA grants "clearance" to market the device. *PhotoMedex, Inc.*, 601 F.3d at 925.

The Ninth Circuit likewise describes the 510(k) process as a clearance process that results in an FDA cleared medical device. For example, in *PhotoMedex*, the Court explained that by completing the premarket notification process, a "device receives '510(k) clearance' and can be put on the market." *Id.*

Here, Plaintiffs' Complaint and their pre-suit notice letters concede that Defendants received 510(k) premarket clearance from the FDA to market Ultherapy. Compl. ¶ 2; *see also* RJN, Exhs. A and B, at 2. These facts are fatal to Plaintiffs' claims asserting that Defendants misrepresent the Ulthera System as being FDA cleared.[2] Thus, Plaintiffs' claims should be dismissed to the extent they are based on advertisements stating that the medical device is FDA cleared. *See Hill*, 841 F. Supp. 2d at 1081 (C.D. Cal. 2011) (rejecting the plaintiffs' argument that "a motion that seeks to dismiss only part of a claim is defective"); *Bonin*, 2014 WL 2527008, at *3 (partially dismissing claims to the extent based on certain allegations); *Asetek Holdings, Inc.*, 2013 WL 12175001, at *4 (same). If the Court deems striking the FDA cleared allegations from the Complaint more appropriate, instead of a partial dismissal of the claims, Defendants alternatively request the Court to strike or dismiss all references to the FDA cleared allegations under Rule 12(f), which are pleaded in paragraphs 2, 7, 8, 9, 33, 34, 36, 37, 38, 39, 41, 52, 59.d., 66, 70, 71,

---

[2] And, given that the FDA does not grant "approval" to Class II devices, but "clearance," the idea that Plaintiffs could be confused into believing that a Class II device has approval is implausible, to say the least. *See infra*, Section II.E.

9

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT AND ALTERNATIVE REQUEST TO STRIKE CERTAIN ALLEGATIONS

1   91, and 98.d.

2   **E.      Plaintiffs' Claims Fail To Satisfy Rule 9(b)'s Heightened Pleading Standards.**

3           Plaintiffs must allege factually "plausible" allegations that constitute cognizable claims

4   against the named defendants.  *See Van Den Heuvel v. Expedia Travel*, No. 2:16-cv-0567-JAM-

5   ACPS, 2016 WL 2928045, at *1 (E.D. Cal. May 19, 2016) (stating that a complaint "must contain

6   sufficient factual content to state a claim to relief that is plausible on its face") (internal quotation

7   marks and citation omitted).  Further, where, as here, a plaintiff's claim is grounded in fraud, it is

8   subject to the heightened pleading standard under FRCP 9(b).  *See In re Sony Gaming Networks*

9   *and Customer Data Security Breach Litigation*, 903 F. Supp. 2d 942, 953 (S.D. Cal. 2012).  "It is

10  well-settled that Rule 9(b) applies to state law claims sounding in fraud that are brought in a

11  federal action, regardless of the basis of federal jurisdiction."  *Kowalsky v. Hewlett-Packard Co.*,

12  771 F. Supp. 2d 1138, 1142 (N.D. Cal. 2010).  Indeed, where "CLRA, FAL, and UCL claims

13  sound in fraud, they are subject to Rule 9(b)'s heightened pleading standard."  *Harris v. Las Vegas*

14  *Sands L.L.C.*, 12-cv-10858, 2013 WL 5291142, at *1 (C.D. Cal. Aug. 16, 2013) (citing *Kearns v.*

15  *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)).

16          To satisfy the Rule 9(b) standard, "[a]verments of fraud must be accompanied by 'the who,

17  what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317

18  F.3d 1097, 1106 (9th Cir. 2003) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

19  Furthermore, the requirement of specificity in a fraud action against a corporation, as Defendants

20  are here, "requires the plaintiff to allege the names of the persons who made the allegedly

21  fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote,

22  and when it was said or written."  *Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 956

23  (E.D. Cal. 2015) (citation omitted); *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F.

24  Supp. 3d 1092, 1108 (C.D. Cal. 2015) (citations omitted) ("Where fraud has allegedly been

25  perpetrated by a corporation . . . plaintiffs must allege the names of the employees or agents who

26  purportedly made the fraudulent representations or omissions, or at a minimum identify them by

27  their titles and/or job responsibilities.") (citations omitted).

28          Here, neither Plaintiff has alleged *who* provided them with the advertisements.  Plaintiffs

1  have only pleaded that displays and brochures were "provided by Defendants to Ultherapy-

2  authorized medical practices" (Compl. ¶¶ 16, 21), without actually pleading which Defendant

3  and/or which medical practice actually provided them these alleged advertisements, let alone the

4  names of specific employees or agents, or the titles and/or job responsibilities of the individuals

5  responsible for the advertisements.[3]  Without this basic information, Defendants do not have

6  enough factual allegations to investigate the source of the advertisements that Plaintiffs allegedly

7  saw and defend the claims on the ground that they did not personally participate in the alleged

8  "unlawful practices" or had "unbridled control over the practices that are found to violate [these

9  statutes]."  *Galope v. Deutsche Bank Nat'l Tr. Co.*, 666 F. App'x 671, 674 (9th Cir. 2016) (internal

10  quotation marks and citation omitted).  For these reasons, the requirement to identify the persons

11  who made the alleged misrepresentations, as well as their time, place, and manner, is not just a

12  pleading formality, but a critical point of establishing both that Plaintiffs' claims against these

13  Defendants are plausible, and to providing due process sufficient to enable Defendants to defend

14  themselves.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Rule 9(b)

15  demands that the circumstances constituting the alleged fraud be specific enough to give

16  defendants notice of the particular misconduct . . . so that they can defend against the charge and

17  not just deny that they have done anything wrong.") (internal quotation marks and citations

18  omitted).

19       Next, Plaintiffs allege in the Complaint that "[p]rior to purchasing Ultherapy, Plaintiff

20  Echols saw, and relied upon, Defendants' online social media advertising, printed marketing

21  materials, including brochures provided by Defendants to Ultherapy-authorized medical practices,

22  and reviewed Defendants' official Ultherapy website, all of which specifically represented or

23  suggested that the device and procedure was approved by the FDA."  Compl. ¶ 21.  However,

24  Plaintiff Echols fails to identify *what* specific advertisements she allegedly saw and relied upon,

25  _____

26       [3] Although Plaintiffs allege the name of the medical facility through which they received
the treatment, they do not allege whether they saw the advertisements at these medical facilities.
27  Compl. ¶¶ 15, 16, 20, 21.

28

---

11

1   including the content of any such advertisements.  Furthermore, Plaintiff Tryan alleges that she

2   relied upon multiple "advertising materials, including displays and brochures," yet she can

3   specifically identify only a single advertisement.  *Id.* ¶ 16.  Accordingly, neither Plaintiff has

4   properly alleged the "what" sufficient to satisfy the heightened requirements under Rule 9(b).

5       The "when" prong of the 9(b) analysis is also lacking because Plaintiffs allege that they

6   saw the advertisements "prior to purchasing" the procedure, but fail to provide a specific date or

7   additional detail.  *Id.* ¶¶ 16, 21.  The exact dates on which Plaintiffs viewed – and relied upon –

8   the advertisements are critical to Defendants' ability to evaluate and respond to Plaintiffs'

9   allegations.  Without knowing the dates that Plaintiffs saw the advertisements, Defendants cannot

10  assess whether the claims are time-barred, the marketing campaign the advertisement at issue was

11  a part of, and the advertising content that Defendants approved during that specific time-frame.

12      Additionally, neither Plaintiff has properly alleged the location *where* they viewed the

13  subject advertisements.  Although Plaintiff Tryan alleges she purchased the Ultherapy treatment

14  from Orlino Oliva Editha C Inc., she does not indicate, as explained above, whether she viewed

15  the specific brochure at that location or somewhere else entirely.  *Id.* ¶¶ 15, 16.  Similarly, Plaintiff

16  Echols asserts she relied on "printed marketing materials" and "brochures," but does not allege

17  *where* she viewed these allegedly misleading materials.  *Id.* ¶ 21.

18      Finally, neither Plaintiff alleges *why* knowing that the medical treatment was "FDA

19  cleared" instead of "FDA approved" was so important to their decision to purchase the Ultherapy

20  treatment, particularly when a Class II device like Ultherapy only needs to be FDA cleared, does

21  not require and cannot obtain FDA approval, and "pose[s] fewer risks" and can "enter the market

22  more easily" than Class III devices that require FDA approval.  *See Ivy Sports Med., LLC v.*

23  *Burwell*, 767 F.3d 81, 83 (D.C. Cir. 2014).  Plaintiffs' Complaint is devoid of any allegations

24  regarding why they would have allegedly "paid less for treatment, declined to purchase the

25  treatment, and/or considered alternative treatments that were FDA approved."  Compl. ¶¶ 19, 23.

26  Thus, Plaintiffs have failed to allege the "why" element of Rule 9(b), which is critical to determine

27  whether they in fact suffered any harm from these advertisements for purposes of standing.

28      The above details are critical to Plaintiffs' claims.  Indeed, in *Kearns*, the court dismissed

12

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT AND
ALTERNATIVE REQUEST TO STRIKE CERTAIN ALLEGATIONS

1   claims pursuant to Rule 9(b) because the plaintiff did not "specify what the television

2   advertisements or other sales material specifically state.  Nor did he specify when he was exposed

3   to them or which ones he found material."  *Kearns*, 567 F.3d at 1126; s*ee also Stanwood v. Mary*

4   *Kay, Inc.*, 941 F. Supp. 2d 1212, 1220 (C.D. Cal. 2012) ("[Plaintiff] does not plead what the

5   advertising materials specifically state.  She points to no particular advertisements or promotional

6   materials that she was personally exposed to. . . .  Thus, she has failed to meet the pleading

7   requirements of Rule 9(b) for these claims.").

8        Here, although the Complaint contains general examples of the advertisements at issue,

9   these also do not satisfy the Rule 9(b) pleading requirements because Plaintiffs have not alleged

10  that they themselves saw those advertisements, and certainly do not allege that they saw and relied

11  upon these advertisements prior to obtaining Ultherapy treatment.  *See Elias v. Hewlett-Packard*

12  *Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012) (allegations were insufficient under Rule 9(b)

13  because plaintiff "failed to specifically allege that he saw any of the statements that he claims are

14  misleading.").  Conclusory allegations that the advertisements existed are not enough.[4]

15       Plaintiffs' claims, as currently alleged, lacked sufficient detail to determine whether they

16  are plausible as a factual matter.  For example, Plaintiffs' Complaint is completely devoid of

17  allegations regarding what their medical providers represented regarding the Ultherapy procedure

18  and its FDA status.  These facts are critical because Defendants have no control over what

19  representations independent medical providers make, which may or may not have contributed to

20  Plaintiffs' understanding of the Ultherapy procedure.  Also, while Plaintiffs allege that they relied

21  on materials indicating that Ultherapy is FDA approved, Compl. ¶¶ 16, 21, they seem to

22  simultaneously ignore the materials expressly using the term FDA cleared, fail to articulate how

23  _____

24       [4] Further, to the extent that Plaintiffs' counsel's solicitation for new clients has borne fruit,
    Plaintiffs should have joined such persons in this proceeding and specifically alleged what

25  materials they claim to have viewed and relied upon.  The Complaint is not the place for secrecy
    or generality; to the extent there are allegations made by known plaintiffs, they must be

26  specifically set forth so that the Court can address their sufficiency and standing along with the
    currently-named Plaintiffs.  *See Ashcroft*, 556 U.S. at 678 ("complaint must contain sufficient

27  factual matter").

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT AND
ALTERNATIVE REQUEST TO STRIKE CERTAIN ALLEGATIONS

1  their ostensibly sophisticated understanding of the distinction between the two terminologies led

2  them to conclude that a Class II device had FDA "approval" instead of "clearance," fail to explain

3  why they did not consult the FDA for a definitive answer and, most importantly, fail to explain

4  how and why their intermediary medical providers either contributed to or failed to resolve any

5  confusion that they had.  *See id.* ¶¶ 15-23.  Given that Plaintiffs' counsel has been seeking

6  additional Plaintiffs to join the suit, if there are additional pertinent facts, Plaintiffs should be able

7  to allege them, and must do so rather than rely on generalities.  Sufficient facts are essential to

8  determining plausibility, as they are determining the responsibility for alleged fraud.  Rule 9(b)

9  requires more than Plaintiffs have alleged.

10      Plaintiffs' failure to include sufficient factual allegations under Rule 9(b) prevents

11  Defendants from being placed on notice of the scope of the claims at issue.  For these reasons,

12  Plaintiffs' claims should be dismissed.

13  **F.    Plaintiffs' CLRA Claim For Monetary Damages Fails Because The Pre-Suit Notice**

14      **Letter Did Not Comply With The Statutory Requirements.**

15      The CLRA requires a plaintiff to deliver the defendant written notice identifying the

16  alleged violations of the CLRA and demanding that the defendant remedy the alleged violations at

17  least thirty days before suing for damages.  Cal. Civ. Code § 1782(a).  This requirement cannot be

18  met with mere substantial compliance.  Rather, Courts have held that the CLRA "scrupulously"

19  "requires *strict* compliance with the notice requirements."  *Laster v. T-Mobile USA, Inc.*, 407 F.

20  Supp. 2d 1181, 1196 (S.D. Cal. 2005) (emphasis in original); *see also Outboard Marine Corp. v.*

21  *Superior Court*, 52 Cal. App. 3d 30, 41 (1975) ("The clear intent of the [CLRA] is to provide and

22  facilitate pre-complaint settlements of consumer actions wherever possible and to establish a

23  limited period during which such settlement may be accomplished.  This clear purpose may only

24  be accomplished by a literal application of the notice provisions.").

25      Although Plaintiffs allege they provided Defendants with notice of their violations of the

26  CLRA, the purported notice did not comply with the provisions of Civil Code § 1782 such that the

27  CLRA claim must be dismissed.  Specifically, the pre-suit notice letter only vaguely refers to

28  "Merz's advertisements, including social media ads and brochures."  *See*, RJN, Exhs. A and B, at

14

2.  The purported notice fails to describe with particularity *any* such advertisement – let alone all advertisements – and therefore does not comply with the CLRA.

In *Ruszecki v. Nelson Bach USA Ltd.*, 12-cv-495-L(NLS), 2015 WL 6750980, at *5 (S.D. Cal. June 25, 2015), the defendant moved to dismiss the CLRA claims based on any products or alleged violations not explicitly mentioned in the CLRA letter.  There, the plaintiff alleged that she complied with the CLRA's notice requirement by stating: "In fact, all of your products, not only Original Rescue Drops, have no efficacy beyond a placebo," in the notice letter.  *Id*.  However, the plaintiff sought damages for a variety of products – Rescue Sleep melts, Rescue gum, and Rescue kids products.  *Id*.  The Court held that the general statement contained in the CLRA letter "does not comport with the rigid compliance courts have consistently required under the CLRA."  *Id*. at *6.  The Court therefore dismissed *with prejudice* the plaintiff's damages claims under the CLRA insofar as they were based on products and alleged misrepresentations that were not specified in the CLRA letter.  *Id*.

Further, in order to constitute effective notice, a plaintiff must notify a defendant of *each alleged violation* of the CLRA.  *Allen v. Similasan Corp.*, 12-cv-0376-BTM-WMC, 2013 WL 5436648, at *3 (S.D. Cal. Sept. 27, 2013).  Here, Plaintiffs failed to provide any detail regarding the alleged violations beyond their assertions that "Merz's advertisements, including social media ads and brochures, [state] that its Ultherapy procedure is 'FDA-cleared' or 'FDA-approved'. . . ."  Of course, Plaintiffs now concede that Ultherapy is FDA cleared for specific uses.  *See* Compl. ¶ 2.  Beyond that, Plaintiffs did not identify any instance of advertisement containing the phrase "FDA cleared" or "FDA approved" nor did they specifically identify or provide copies of the marketing materials Plaintiffs allege violate Section 1770.  Rather, Plaintiffs' demand letters merely make general allegations regarding Defendants' advertising practices.  *See* RJN, Exhs. A and B.  They do not provide any details as to the particular advertisements on which the Plaintiffs supposedly relied.  *See id.*  Therefore, it was impossible for Defendants to identify – let alone remediate – those alleged violations before a lawsuit was filed, thus defeating the very purpose of the notice letter.  Accordingly, Plaintiffs cannot remedy their failure to give pre-suit notice by giving notice after suit was filed.  *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950

1   (S.D. Cal. 2007).  For these reasons, Plaintiffs' CLRA claim for damages must be dismissed with

2   prejudice.  *Id*. ("failure to give notice before seeking damages necessitates dismissal with

3   prejudice").

4   **G.**   **Plaintiffs Lack Standing To Seek Injunctive Relief.**

5        In order for a court to have subject matter jurisdiction, a plaintiff must have Article III

6   standing.  *Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  To have standing

7   to seek injunctive relief, as Plaintiffs do here, there must be "a realistic threat of future injury."

8   *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040-41 (9th Cir. 1999).  "[A]llegations of possible

9   future injury are not sufficient."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).

10  Notably, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy

11  regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."

12  *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

13       There is no threat of future injury where, as here, Plaintiffs are now aware of the alleged

14  misrepresentations regarding the status of FDA approval for the Ultherapy procedure.  Plaintiffs

15  allege that if Defendants had disclosed the lack of FDA approval, they would have paid less,

16  declined to undergo the treatments, or considered other treatments.  Compl. ¶¶ 19, 23.  Thus,

17  Plaintiffs cannot plausibly allege or possibly prove that they will, in the future, rely on these

18  alleged misrepresentations to their detriment.  *See Luman v. Theismann*, 647 F. App'x 804, 807

19  (9th Cir. 2016) ("The district court did not err in determining that Plaintiffs lack standing to pursue

20  injunctive relief.  To maintain standing, Plaintiffs must show a sufficient likelihood that they will

21  be injured by [defendant] again in a similar way and that the future injury can be redressed by

22  injunctive relief. . . .  Because Plaintiffs do not allege that they intend to purchase [the product at

23  issue] in the future, they cannot demonstrate a likelihood of future injury.") (citations omitted).  In

24  *Garrison v. Whole Foods Mkt. Grp., Inc.*, 13-cv-05222-VC, 2014 WL 2451290, at *5 (N.D. Cal.

25  June 2, 2014), for example, the court reasoned that "[t]he named plaintiffs in this case allege that

26  had they known the Whole Foods products they purchased contained SAPP, they would not have

27  purchased them.  Now they know.  There is therefore no danger that they will be misled in the

28  future."  *See also Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 458 (S.D. Cal. 2014) ("These

16

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT AND
ALTERNATIVE REQUEST TO STRIKE CERTAIN ALLEGATIONS

1  consumers will not benefit from the injunctive relief as they cannot demonstrate a probability of

2  future injury; if they know the 'truth' they cannot be further deceived.").  Similarly, here, "[n]ow

3  [the Plaintiffs] know."

4       In *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1116 (9th Cir. 2017), the Ninth

5  Circuit held that a plaintiff had standing to pursue injunctive relief on a false advertising claim

6  where the plaintiff alleged she still desired to purchase the defendant's product in the future.

7  Specifically, the plaintiff there alleged that she "continue[d] to desire to purchase" the product,

8  that she "would purchase [the improved product] if it were possible," and that she "regularly

9  visit[ed] stores" where the product was sold.  *Id.*  Here, in contrast, Plaintiffs do not allege that

10  they desire to purchase Ultherapy in the future.  Indeed, even if such an allegation was pleaded, it

11  would be implausible, considering Plaintiffs have already alleged that they understand the

12  difference between FDA approved and FDA cleared and that Ultherapy is FDA cleared.  Thus,

13  because Plaintiffs' claim for injunctive relief is premised entirely on their alleged past injuries,

14  *Davidson* is inapplicable here.

15       Lastly, Defendants have advised Plaintiffs that Defendants are attempting to identify and

16  remove from view and circulation any outdated Merz or Ulthera advertising materials that may

17  state FDA approved.  *See* RJN, Exh. G, Defendants' November 15, 2017 Letter.  Defendants also

18  have advised Plaintiffs that they do not intend to market the Ulthera System or Ultherapy System

19  as FDA approved.  *See id.*  For this additional reason, Plaintiffs lack standing to proceed.  *Los*

20  *Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (a case can be rendered "moot" for purposes of

21  Article III standing where "interim relief or events have completely and irrevocably eradicated the

22  effects of the alleged violation").

23       **III.**    **CONCLUSION**

24       For the foregoing reasons, Defendants respectfully request that the Court dismiss

25  Plaintiffs' Complaint in its entirety and each specified portion mentioned above.  Further, because

26  Plaintiffs' claims are preempted by the FDCA, amendment would be futile, and the Complaint

27  should be dismissed without leave to amend.  *See Russell v. U.S. Dep't of the Army*, 191 F.3d

28  1016, 1020 (9th Cir. 1999) (where claim is preempted, leave to amend is properly denied as

17

1    futile).  Alternatively, Defendants request that the Court strike or dismiss all references to the FDA

2    cleared allegations or other iterations of the same under Rule 12(f), which are pleaded in

3    paragraphs 2, 7, 8, 9, 33, 34, 36, 37, 38, 39, 41, 52, 59.d, 66, 70, 71, 91, and 98.d.

4

5    DATED:  November 21, 2017                 Respectfully submitted,

6                                             MCGUIREWOODS LLP

7

8                                       By:  _____/s/ A. Brooks Gresham_____
                                             A. Brooks Gresham
9                                            Bethany G. Lukitsch
                                             James F. Neale
10                                           Arsen Kourinian
                                             Attorneys for Defendants Ulthera, Inc. and Merz
11                                           North America, Inc.

12

13

14

15

16   96272683_1.docx

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT AND
ALTERNATIVE REQUEST TO STRIKE CERTAIN ALLEGATIONS