Bevin Allen Pike (SBN 221936)
Bevin.Pike@capstonelawyers.com
Robert K. Friedl (SBN 134947)
Robert.Friedl@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:      (310) 556-4811
Facsimile:      (310) 943-0396

Attorneys for Plaintiffs Georgia Tryan
and Marilyn Echols

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIA TRYAN and MARILYN ECHOLS, as individuals, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ULTHERA, INC., a Delaware corporation; and MERZ NORTH AMERICA, INC., a Delaware corporation,<br><br>Defendants. | Case No.: 2:17-cv-02036-MCE-CMK<br><br>Hon. Morrison C. England, Jr.<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT AND ALTERNATIVE REQUEST TO STRIKE CERTAIN ALLEGATIONS**<br><br>Date:            January 25, 2018<br>Time:            2:00 p.m.<br>Courtroom:   7 |

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................... 1

II.    THE STANDARDS FOR RULING ON A RULE 12(B)(6) MOTION TO
       DISMISS ................................................................................................................. 3

III.   PLAINTIFFS' CLAIMS ARE NOT PREEMPTED ..................................................... 4

       A.   Plaintiffs' Claims Rely on Alleged Violations of a State-Law
            Duty That Parallels a Federal-Law Duty and Are Therefore Not
            Preempted ...................................................................................................... 4

       B.   Plaintiffs' State Law Claims Are Not Preempted Because They
            Relate to Claims of "Unfair Trade Practices…Not Limited to
            [Medical] Devices" ........................................................................................ 7

       C.   510(k) Clearance Is Not A Basis For Preemption .......................................... 8

       D.   The Cases Defendants Rely on Are Inapposite ............................................... 9

IV.    THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY ....................... 11

V.     UCL, FAL AND CLRA CLAIMS MAY BE BASED ON DECEPTIVE
       BUT TECHNICALLY TRUE STATEMENTS ........................................................... 13

VI.    PLAINTIFFS' CLAIMS ARE PLEADED WITH THE REQUISITE
       PARTICULARITY ................................................................................................. 15

VII.   PLAINTIFFS' CLRA NOTICE SUFFICIENTLY PUTS DEFENDANTS
       ON NOTICE OF PLAINTIFFS' CLAIMS ............................................................... 16

VIII.  UNDER NINTH CIRCUIT AUTHORITY, PLAINTIFFS HAVE
       ARTICLE III STANDING TO PURSUE INJUNCTIVE RELIEF ............................ 18

IX.    CONCLUSION ...................................................................................................... 20

1

**TABLE OF AUTHORITIES**

2

FEDERAL CASES

3   *Airwair Int'l Lt. v. Vans, Inc.,* 2013 WL 3786309 (N.D. Cal. July 17, 2013) ..........................12

4   *Allen v. Similasan Corp.,* 2013 WL 5436648 (S.D. Cal. Sep. 27, 2013)..................................17

5   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................3

6   *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753 (9th Cir. 2015) ..........................................4

7   *Azimpour v. Sears, Roebuck & Company*, 2017 WL 1496255 (S.D. Cal., Apr.

8       26, 2017) ................................................................................................................................17

9   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) ................................................................3

10  *Buckman Co. v. Plaintiffs' Legal. Comm.,* 531 U.S. 341 (2001) .........................................9, 10

11  *California v. ARC Am. Corp*., 490 U.S. 93, 109 S. Ct. 1661, 104 L. Ed. 2d 86

12      (1989)................................................................................................................................4, 10

13  *Cattie v. Wal-Mart Stores, Inc.,* 504 F. Supp. 2d 939 (2007) ...................................................17

14  *Chacanaca v. Quaker Oats Co*., 752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...............................13

15  *Chamberlan v. Ford Motor Co*., 314 F. Supp. 2d 953 (N.D. Cal. 2004)..............................4, 10

16  *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D 365 (N.D. Cal. 2010) ..........................13

17  *Clark v. Time Warner Cable,* 523 F.3d 1110 (9th Cir. 2008) ...................................................11

18  *Comm. of Dental Amalgam Mfrs. And Distribs. V. Stratton,* 92 F.3d 807 (9th

19      Cir. 1996) .............................................................................................................................7, 8

20  *Cooper v. Parsky*, 140 F.3d 433 (2d Cir. 1998)..........................................................................4

21  *Davidson v. Kimberly-Clark Corporation*, 873 F.3d 1103 (9th Cir. 2017) ..................18, 19, 20

22  *DeBons v. Globus Medical, Inc.,* 2014 WL 12495351 (C.D. Cal. Aug. 8, 2014)......................9

23  *DeSoto v. Yellow Freight Sys*., 957 F.2d 655 (9th Cir. 1992) ..............................................4, 20

24  *DiFolco v. MSNBC L.L.C.*, 622 F.3d 104 (2d Cir. 2010)............................................................4

25  *Eclat Pharmaceuticals, LLC v. West-Ward Pharmaceutical Corp.,* 2014 WL

26      12597594 (C.D. Cal. Feb. 12, 2014)......................................................................................2

27  *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S. Ct. 1210,

28      10 L. Ed. 2d 248 (1963) .........................................................................................................4

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT

*Gustavson v. Wrigley Sales Company*, 961 F. Supp. 2d 1100 (N.D. Cal. 2013) ........................6

*In re 5-hour ENERGY Marketing and Sales Practices Litigation*, 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ...................................................................13

*In re Easysaver Rewards Litigation,* 737 F. Supp. 2d 1159 (S.D. Cal. Aug. 13, 2010) ...........................................................................................................3, 17

*In re Ferrero Litigation,* 794 F. Supp. 2d 1107 (S.D. Cal. June 30, 2011) ............................14

*Innovative Health Solutions, Inc., v. DyAnsys, Inc.,* 2015 WL 2398931 (N.D. Cal. May 19, 2015)...........................................................................10

*Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 107 S. Ct. 805, 93 L. Ed. 2d 883 (1987).........................................................................................................4

*Jones v. ConAgra Foods, Inc*., 912 F. Supp. 2d 889 (N.D. Cal. 2012) ...................................13

*Kane v. Chobani,* 2013 WL 3703981 (N.D. Cal. July 12, 2013) .........................................5, 10

*Mediacom Southeast LLC v. BellSouth Telecommunications, Inc*., 672 F3d 396 (6th Cir. 2012).........................................................................................3

*Medtronic, Inc. v. Lohr,* 518 U.S. 470 (1996) ................................................................passim

*Moore v. Kayport Package Express, Inc*., 885 F.2d 531 (9th Cir. 1989) ................................15

*National Bank of Commerce of El Dorado v. Kimberly-Clark Corp.,* 38 F.2d 899 (1994).........................................................................................................5

*Otero, et al. v. Zeltiq Aesthetics, Inc., et al.,* No. 2:17-cv-03993-DMG-MRW (C.D. Cal. Nov. 21, 2017) ...........................................................................7

*Par Sterile Products, LLC, v. Fresenius Kabi USA LLC,* 2015 WL 1263041 (N.D. Ill. Mar. 17, 2015), .................................................................11

*Perez v. Nidek Co.,* 711 F.3d 1109 (9th Cir. 2013)......................................................5, 9, 10

*PhotoMedex, Inc. v. Irwin,* 601 F.3d 919 (9th Cir. 2010) ............................................11, 14

*Reid v. Johnson & Johnson,* 780 F.3d 952 (9th Cir. 2015) ....................................................12

*Reiter v. Cooper,* 507 U.S. 258 (1993) ...............................................................................11

*Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123 (2nd Cir. 2009) ..........................................3

*Riegel v. Medtronic, Inc.,* 552 U.S. 312 (2008) ....................................................................9

1  *Ruszecki v. Nelson Bach USA Ltd.,* 2015 WL 6750980 (S.D. Cal. June 25, 2015) .................17

2  *Semegen v. Weidner,* 780 F.2d 727 (9th Cir. 1985) ..............................................................15

3  *Stengel v. Medtronic, Inc.,* 704 F.3d 1224 (9th Cir. 2013) ......................................................4

4  *Strickrath v. Globalstar, Inc.,* 527 F. Supp. 2d 992 (N.D. Cal. Sep. 25, 2007).......................16

5  *Tribendis v. Life Care Centers of America, Inc.,* 2014 WL 12639322 (C.D. Cal.

6     Sep. 19, 2014) .................................................................................................................17

7  *Williams v. Gerber Products Co*. 552 F.3d 934 (9th Cir. 2008) ............................................14

8  *Zakaria v. Gerber Products Co.,* 2015 WL 3827654 (C.D. Cal. June 18, 2015) ...............2, 12

9

10  **STATE CASES**

11  *Cel-Tech Comms. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163 (1999) .............................8

12  *Klein v. Chevron U.S.A., Inc.,* 202 Cal. App.4th 1342 (2012) ................................................14

13  *Morgan v. AT & T Wireless Services, Inc*., 177 Cal. App. 4th 1235 (2009) ...........................14

14

15  **FEDERAL STATUTES**

16  21 C.F.R. § 807.97 ...............................................................................................1, 5, 6, 8

17  21 C.F.R. § 808.1(d).....................................................................................................8

18  21 C.F.R. § 808.1(d)(1)..............................................................................................2, 7

19  21 C.F.R. § 808.1(d)(2) ................................................................................................2

20  21 U.S.C. § 360c(i)(1) .................................................................................................8

21  21 U.S.C. § 360e ........................................................................................................8

22  21 U.S.C. § 360k(a).....................................................................................................7

23

24  **STATE STATUTES**

25  Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL)) ..................................1, 2

26  Cal. Bus. & Prof. Code §§ 17500 *et seq.* (False Advertising Law (FAL))............................1, 2

27  Cal. Civ. Code §§ 1770 *et seq.* (Cons. Legal Remedies Act Cal. (CLRA)) ..........................1, 2

28  Cal. Civ. Code § 1782(b).............................................................................................17

Cal. Health & Safety Code § 110110(a) ............................................................5

Cal. Health & Safety Code § 110390. ...........................................................1, 5

Cal. Health & Safety Code § 111550 ..............................................................5


**SECONDARY AUTHORITIES**

5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure (3d

   ed. 2004) ...................................................................................................14

90 Stat. 539 ........................................................................................................8

https://www.fda.gov/downloads/medicaldevices/deviceregulationand

   guidance/guidancedocuments/ucm284443.pdf. ....................................18

https://www.fda.gov/downloads/MedicalDevices/DeviceRegulationand

   Guidance/GuidanceDocuments/UCM514771.pdf .................................18

*Medical Devices; California Application for Exemption From Federal*

   *Preemption of State Medical Device Requirements*, 45 Fed. Reg. 67321-01 .......................5

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT

1

## I.     INTRODUCTION

2       Plaintiffs Georgia Tryan and Marilyn Echols ("Plaintiffs") filed a Complaint seeking to

3   hold Defendants Ulthera, Inc. and Merz North America, Inc. ("Defendants") liable for

4   unlawful and deceptive labeling and related advertising of its "Ultherapy" non-surgical

5   cosmetic procedure pursuant to California's consumer protection statutes – the Unfair

6   Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et. seq.*) ("UCL"), False Advertising Law

7   (Cal. Bus. & Prof. Code §§ 17500 *et seq.*) ("FAL") and Consumers Legal Remedies Act (Cal.

8   Civil Code §§ 1770 *et seq.*) ("CLRA").  Plaintiffs' claims are predicated on Defendants' false,

9   misleading and deceptive marketing practices which led consumers to believe that they were

10  purchasing medical treatments that have gone through the rigorous FDA pre-market approval

11  process, with all the safety and efficacy that implies.  In actuality, however, the Ultherapy

12  procedure has only received the far less rigorous 510(k) premarket notification clearance,

13  which merely allows the device to be legally marketed after a determination that the procedure

14  is substantially equivalent to a pre-existing device marketed before the enactment date of the

15  Medical Device Amendments ("MDA") to the Federal Food, Drug and Cosmetic Act

16  ("FDCA").  Indeed, the FDA itself warns against such misrepresentations by stating that

17  "[a]ny representation that creates an impression of official approval of a device because of

18  complying with the premarket notification regulations is misleading and constitutes

19  misbranding."  21 C.F.R. §807.97.  Thus, Defendants' representations implying that the

20  Ultherapy procedure has received FDA approval violate California's Sherman Law, which

21  holds that "[i]t is unlawful for any person to disseminate any false advertisement of any food,

22  drug, device or cosmetic.  An advertisement is false if it is false or misleading in any

23  particular."  Cal. Health & Safety Code § 110390.

24      Here, Defendants have filed a motion to dismiss Plaintiffs' Complaint based on various

25  grounds.  For the reasons stated below, Defendants' Motion should be denied.

26      Defendants' preemption argument fails in many respects.  First, under applicable

27  California authority, because Plaintiffs allege violations of California's Sherman Law, and not

28  direct violations of the Food, Drug, and Cosmetic Act ("FDCA"), they are not preempted.

Second, the MDA explicitly exempts Plaintiffs' state law claims for unfair and deceptive business practices from express preemption.  *See* 21 C.F.R. §808.1(d)(1)(exempting "unfair trade practices in which the requirements are not limited to devices").  The MDA also exempts state law claims "that are equal to, or substantially identical to, requirements imposed by or under the act." 21 C.F.R. §808.1(d)(2).  Here, Plaintiffs' claims under the UCL, FAL and CLRA are equal to, or substantially identical to, requirements imposed under the act.  Finally, Defendants' preemption argument directly contradicts governing United States Supreme Court authority in *Medtronic, Inc. v. Lohr,* 518 U.S. 470 (1996), which concluded that federal law does not preempt claims stemming from medical devices that were cleared through the 510(k) process, as opposed to Pre-Market Approval ("PMA").

Similarly, the primary jurisdiction doctrine does not apply.  Where, as here, the claims involve misrepresenting that a product is FDA-approved even though it did not actually receive FDA approval, primary jurisdiction is not invoked.  *Zakaria v. Gerber Products Co.,* 2015 WL 3827654, *6-7 (C.D. Cal. June 18, 2015); *Eclat Pharmaceuticals, LLC v. West-Ward Pharmaceutical Corp.,* 2014 WL 12597594, *3 (C.D. Cal. Feb. 12, 2014) ("the pursuit here of Plaintiff's claims that Defendants affirmatively misrepresented that the FDA had approved their products, will not interfere with the regulatory framework of the FDA").

Plaintiffs have also sufficiently alleged their claims under the California Consumers Legal Remedies Act (Cal. Civil Code §§ 1770 *et seq.*) ("CLRA"), Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et. seq.*) ("UCL"), and False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 *et seq.*) ("FAL").  It is well-established that UCL, FAL and CLRA claims may be based on representations that may be literally accurate on some level but nonetheless are deceptive.  The standard is whether the representations tend to mislead or deceive the reasonable consumer.  Here, Plaintiffs sufficiently allege that Defendants' representations affirmatively misrepresent and/or tend to mislead the reasonable consumer into believing that the Ultherapy system has obtained FDA review and approval as to its safety and efficacy when, in fact, Defendants only obtained "clearance," under the 510(k) process, whereby the FDA does not conduct an independent review of the device's safety and efficacy.  Such

1   statements have the capacity, likelihood and tendency to deceive or confuse the public, and are

2   therefore proper bases for UCL, FAL and CLRA claims.

3        Finally, Defendants assertion that Plaintiffs must specifically identify each and every

4   advertisement containing the misrepresentations in their CLRA notice letter contradicts

5   established authority.  Indeed, such a requirement would preclude any false advertising claim,

6   or would require complaints to consist of hundreds of pages.  Here, Plaintiffs' notice letter

7   "satisfies the pre-filing notice requirement because it explicitly alleges violations of the

8   CLRA[,]…[it] explains in plain language the conduct that Plaintiffs allege violates the

9   statute[,]…[it] lists [three] sub-sections of the CLRA, and asks for specific corrections and

10  remedies.  The content of the letter suffices to put [Defendants] on notice of the alleged CLRA

11  violations." *In re Easysaver Rewards Litigation,* 737 F. Supp. 2d 1159, 1178-1179 (S.D. Cal.

12  Aug. 13, 2010).

13       As to Defendants' remaining arguments in the motion to dismiss – failure to plead with

14  particularity under Rule 9(b), standing, etc. – such arguments have all been routinely rejected

15  by the Ninth Circuit's district courts when addressing similar arguments raised by defendants.

16  The Court should, respectfully, reject those arguments here as well.

17       For these reasons, Defendants' Motion to Dismiss should be denied in its entirety.

18  **II.     THE STANDARDS FOR RULING ON A RULE 12(B)(6) MOTION TO DISMISS**

19       Pursuant to Rule 12(b)(6), a plaintiff must state "enough facts to state a claim to relief

20  that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  A

21  claim has "facial plausibility" if the plaintiff pleads facts that "allow [ ] the court to draw the

22  reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.

23  Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  In considering the motion, the court must

24  "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences

25  from those allegations in the light most favorable to plaintiff, and construe the complaint

26  liberally." *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2nd Cir. 2009); *Mediacom

27  Southeast LLC v. BellSouth Telecommunications, Inc*., 672 F.3d 396, 400 (6th Cir. 2012).

28  Further, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT

1  merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence

2  which might be offered in support thereof." *DiFolco v. MSNBC L.L.C.*, 622 F.3d 104, 113 (2d

3  Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).

4      Here, if the Court dismisses any portion of the Complaint, Plaintiffs respectfully

5  request leave to amend. *DeSoto v. Yellow Freight Sys*., 957 F.2d 655, 658 (9th Cir. 1992)

6  (leave to amend is only properly denied "where the amendment would be futile").

7  **III.   PLAINTIFFS' CLAIMS ARE NOT PREEMPTED**

8      The Supreme Court has cautioned that "courts should not lightly infer preemption."

9  *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 491, 107 S. Ct. 805, 93 L. Ed. 2d 883 (1987).

10  Instead, "and particularly in those [cases] in which Congress has 'legislated ... in a field which

11  the States have traditionally occupied,' we start with the assumption that the historic police

12  powers of the States were not to be superseded by the Federal Act unless that was the clear and

13  manifest purpose of Congress." *Lohr,* 518 U.S. at 485.  Thus, "[t]here is a presumption against

14  implied preemption of State law in areas traditionally regulated by the states." *Chamberlan v.*

15  *Ford Motor Co.*, 314 F. Supp. 2d 953, 958 (N.D. Cal. 2004).[1]

16      **A.   Plaintiffs' Claims Rely on Alleged Violations of a State-Law Duty That**

17          **Parallels a Federal-Law Duty and Are Therefore Not Preempted**

18      The Ninth Circuit has determined that a plaintiff's state-law claims are not preempted

19  when the plaintiff's claims are premised on the "violat[ion] [of] a state-law duty that parallels

20  a federal-law duty under the MDA." *Stengel v. Medtronic, Inc.,* 704 F.3d 1224, 1228 (9th Cir.

21  2013).   It is well-established that "the FDCA does not preempt state laws that allow

22  consumers to sue manufacturers that label or package their products in violation of federal

23  law." *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 757 (9th Cir. 2015).  Instead, it

24  preempts any state law that imposes a requirement "that is different from or in addition to, or

25  that is otherwise not identical with" a requirement of the FDCA or certain related federal

26

27        [1] Fraud and unfair business practices are areas traditionally regulated by the States.
*Chamberlan,* 314 F. Supp. 2d at 959 (*citing Florida Lime and Avocado Growers, Inc. v. Paul*,

28  373 U.S. 132, 145–46, 83 S. Ct. 1210, 10 L. Ed. 2d 248 (1963); *California v. ARC Am. Corp*.,
490 U.S. 93, 101, 109 S. Ct. 1661, 104 L. Ed. 2d 86 (1989)).

statutes. 21 U.S.C. §360k(a).  Accordingly, plaintiffs can escape the preemptive force of the FDCA if their claims seek to impose requirements that are identical to those imposed by the FDCA.

Here, Plaintiffs' state law claims allege that Defendants have disseminated false and misleading advertisements that either explicitly contend that the Ultherapy procedure has been approved by the FDA as safe or effective, or imply that it has been approved by the FDA as safe and effective.  Complaint ¶¶1-14, 33-53.  These allegations seek to enforce identical requirements as those imposed by the FDCA: that companies may not create "an impression of official approval of a device because of complying with the premarket notification regulations" as such an impression would be misleading.  21 C.F.R. §807.97; *National Bank of Commerce of El Dorado v. Kimberly-Clark Corp.,* 38 F.2d 899, 993 (1994) ("when a statute only preempts state requirements that are different from or in addition to those imposed by federal law, plaintiffs may still recover under state tort law when defendants fail to comply with the federal requirements").

Although the Sherman Law incorporates the regulations set forth in the FDCA, it expressly states that it is incorporating the federal regulations as the "new drug and new device application regulations of this state." Cal. Health & Safety Code §110110(a).[2]  Accordingly, when a plaintiff sues under the Sherman Law, he is not "suing *because* [defendant's labeling] violates the FDCA," *Perez v. Nidek Co.,* 711 F.3d 1109 (9th Cir. 2013), but rather because the defendant's labeling violates California's labeling laws.  *Kane v. Chobani,* 2013 WL 3703981, *14 (N.D. Cal. July 12, 2013).  Moreover, the Sherman Law specifically provides that "[i]t is unlawful for any person to disseminate any false advertisement of any food, drug, device or cosmetic.  An advertisement is false if it is false or misleading in any particular." Cal. Health & Safety Code §110390.

Indeed, the FDA addressed many issues related to federal preemption in its ruling

---

[2] While Cal. Health & Safety Code § 110110(a) refers to regulations relating to devices that apply for premarket approval, Section 111550 defines "new devices" to include devices that are "reported under Section 510(k) of the federal act (21 U.S.C. or 360(k))[.]"  Cal. Health & Safety Code §111550.

responding to the State of California's Application for Exemption from Federal Preemption of State Medical Device Requirements. *Medical Devices; California Application for Exemption From Federal Preemption of State Medical Device Requirements*, 45 Fed. Reg. 67321-01. In its ruling, the FDA responded to specific questions of federal preemption within the Sherman Law. The FDA held that Cal. Health & Safety Code §110390 (Chapter 4, Article 3 of the Sherman Law) relates to "general requirements not applicable to specific devices" and is therefore not preempted "unless they are applied to a specific device in such a way as to establish requirements that are different from or in addition to adverting requirements established by the FDA for the device." *Id.* As alleged throughout Plaintiffs' complaint, Defendants have violated Cal. Health & Safety Code §110390 by disseminating false and misleading statements related to its Ultherapy procedure. Indeed, by creating an impression that the procedure has been officially approved by the FDA because of the premarket notification regulations and/or explicitly representing that the procedure is FDA approved, Defendants' representations are misleading. 21 CFR § 807.97. Thus, Plaintiffs are not suing under the unlawful prong of the UCL *because* Defendants' conduct violates the FDCA; rather, they are suing because Defendants' conduct violates California's Sherman Law, which imposes the exact same regulations. *Gustavson v. Wrigley Sales Company*, 961 F. Supp. 2d 1100, 1119 (N.D. Cal. 2013).

In a nearly identical case pending before the Central District of California, *Carmen Otero, et al. v. Zeltiq Aesthetics, Inc., et al.,* Case No. 2:17-cv-03993-DMG-MRW[3], the Honorable Dolly M. Gee determined that the plaintiffs' UCL, FAL and CLRA claims were not preempted. There, plaintiffs similarly alleged that the defendant misled consumers by misrepresenting that a non-surgical fat treatment device had FDA approval by citing to its FDA clearance. As here, the defendant's "marketing materials and its advertising campaign for the CoolSculpting system do not explain the difference between Section 501(k) premarket notification clearance and the premarket approval process or even state that there is such a difference." Order re Defendant's Motion to Dismiss, *Otero, et al. v. Zeltiq Aesthetics, Inc., et*

---

[3] Attached hereto pursuant to L.R. 133(i)(3)(i).

1   *al.,* No. 2:17-cv-03993-DMG-MRW, at *3 (C.D. Cal. Nov. 21, 2017). The court determined

2   that:

> Although 21 C.F.R. § 807.97 does not explicitly describe the premarket approval process, the text of the regulation seeks to ensure that consumers are not led to believe that the FDA has conferred premarket approval on a device that has obtained only Section 501(k) premarket notification clearance. Thus, the regulation "relat[es] to . . . applications for premarket approval of new devices" such that it is a state-law duty under California Health & Safety Code § 110110(a). Plaintiffs' claims are not preempted because they rely upon alleged "violat[ions] [of] a state-law duty that parallels a federal-law duty under the MDA."
> *See Stengel*, 704 F.3d at 1228.

9   *Id.* at *9.  Similarly, here, Plaintiffs' claims are not preempted because they rely upon alleged

10  violations of a state-law duty that parallels a federal-law duty under the MDA.

11  **B.      Plaintiffs' State Law Claims Are Not Preempted Because They Relate to**

12  **Claims of "Unfair Trade Practices…Not Limited to [Medical] Devices"**

13          The MDA provides that state law claims are preempted only if they impose

14  requirements that are "different from, or in addition to" a federal regulation or requirement and

15  "relate[s] to safety and effectiveness" of the medical device.  21 U.S.C. §360k(a).  Stated

16  differently, "the scope of preemption is limited to instances where there are *specific* FDA

17  requirements applicable to a *particular* device."  *Comm. of Dental Amalgam Mfrs. And*

18  *Distribs. V. Stratton,* 92 F.3d 807, 812 (9th Cir. 1996) (citation omitted)(emphasis in original).

19  In practice, the only medical devices subject to MDA preemption are those that undergo the

20  pre-market approval ("PMA") process, and not those that undergo the pre-market notification

21  process. *Lohr, supra,* 518 U.S. at 501.

22          State law claims alleging "unfair trade practices in which the requirements are not

23  limited to devices" cannot be preempted by the MDA.  21 C.F.R. §808.1(d)(1).  This rule

24  directly applies to Plaintiffs' UCL, FAL and CLRA claims.  The UCL and FAL are "unfair

25  trade practices" statutes of general applicability, and are not "limited to [medical] devices."

26  *See, e.g., Cel-Tech Comms. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 180 (1999)

27  (holding that the UCL's reach is "sweeping, embracing anything that can properly be called a

28  business practice and that at the same time is forbidden"); *Comm. Of Dental Amalgam Mfrs.,*

*supra,* 92 F.3d at 813 (reversing district court's granting of summary judgment on preemption grounds, reasoning that Proposition 65, a law requiring businesses to warn consumers of chemicals known to pose public health risks, was a "state law of general applicability" and "not directed at any product or industry").

Defendants' preemption argument directly contradicts governing United States Supreme Court authority in *Lohr, supra,* 518 U.S. 470.  There, the Supreme Court held that state laws and statutes of general applicability such as state consumer fraud statutes are not preempted by the MDA.  State requirements are "only" preempted when the "FDA has established "'specific counterpart regulations or … other specific requirements applicable to a particular device.'" *Id.* at 498 (quoting 21 C.F.R. §808.1(d)).

**C.     510(k) Clearance Is Not A Basis For Preemption**

The FDA regulates the introduction of medical devices into interstate commerce, pursuant to the MDA.  90 Stat. 539.  Under the MDA, the FDA can review products and allow them to go to market via two different procedures: PMA or 510(k) Clearance.

The first procedure is the rigorous PMA process, generally applicable to all new Class III devices (and some Class II products).  PMA requires manufacturers to provide the FDA with proof that the device is both safe and effective, through an exhaustive and comprehensive device-specific review.  21 U.S.C. §360e.  Under the PMA process, the FDA only grants approval when there is a reasonable assurance of the device's safety and effectiveness. *Id*.

The second procedure, the "pre-market notification" or "510(k) Clearance" process, allows a manufacturer to market a device that the FDA determines is "substantially equivalent" to another product that was previously cleared or approved by the FDA.  21 U.S.C. §360c(i)(1); 21 U.S.C. §807.92; *Lohr,* 518 U.S. at 478.  "The § 510(k) notification process is by no means comparable to the PMA process; in contrast to the 1,200 hours necessary to complete a PMA review, the §510(k) review is completed in an average of only 20 hours." *Lohr,* 518 U.S. at 479.  "The attraction of substantial equivalence is clear.  510k notification requires little information, rarely elicits a negative response from the FDA, and gets processed very quickly. *Id*.  Unlike the PMA process, the "FDA does not 'require' that a device allowed

to enter the market as a substantial equivalent [through the 510k process] take any particular form for any particular reason.'" *Id.* at 493.  Due to these differences, 510(k) clearance does not constitute "approval" of a device or its labeling and "any representation that creates an impression of official approval of a device because of complying with the premarket notification regulations is misleading and constitutes misbranding." 21 C.F.R. §807.97.

The Supreme Court explained in *Lohr* that the regulatory path a medical device takes – e.g., 510(k) clearance versus PMA – is critical to the preemption analysis.  In *Lohr,* the Court held that state law design defect claims against a manufacturer of pacemakers, which were cleared through the 510(k) process, were not preempted.  518 U.S. at 494.  The Court contrasted 510(k) clearance with PMA, observing that the abbreviated, expedited 510(k) process did not "require … a device substantially equivalent to [an existing one], to be marketed without running the gauntlet of the PMA process."  *Id.* PMA is "by no means comparable" to 510(k) clearance. *Id.* at 478-479.

> There is no suggestion in either the statutory scheme or the legislative history that the §510(k) exemption process was intended to do anything . . . [to exclude] the possibility that the manufacturer of the device would have to defend itself against state-law claims."

*Lohr,* 518 U.S. at 494; *see also Riegel v. Medtronic, Inc.,* 552 U.S. 312 (2008).

### D.    The Cases Defendants Rely on Are Inapposite

The cases relied on in Defendants' Motion are inapposite to the case at bar.  *Buckman Co. v. Plaintiffs' Legal. Comm.,* 531 U.S. 341 (2001), *Perez v. Nidek Co.,* 711 F.3d 1109, 1119 (9th Cir. 2013), and *DeBons v. Globus Medical, Inc.,* 2014 WL 12495351 (C.D. Cal. Aug. 8, 2014) do not apply to this matter.

In *Buckman,* the plaintiffs alleged the defendant made fraudulent representations to the FDA, which led to the FDA's approval of medical devices that caused injuries to the plaintiffs. *Buckman,* 531 U.S. at 343.  The Supreme Court concluded, "the plaintiffs' state-law fraud-on-the-FDA claims conflict with, and are therefore impliedly pre-empted by federal law.  The conflict stems from the fact that the federal statutory scheme amply empowers the FDA to punish and deter fraud against the Agency, and that this authority is used by the Agency to

1  achieve a somewhat delicate balance of statutory objectives.  The balance sought by the

2  Agency can be skewed by allowing fraud-on-the-FDA claims under state tort law." *Id.* at 348.

3  Plaintiffs' claims, however, are not based on fraud-on-the-FDA as Plaintiffs do not allege that

4  Defendants made fraudulent representations to the FDA.  Instead, Plaintiffs' claims are based

5  on fraud-on-the-consumer – that Defendant's labels were misleading - and are, therefore, not

6  preempted.

7         In *Perez,* there was no independent California law imposing a duty on manufacturers of

8  medical devices to "affirmatively tell patients when medical devices have not been approved

9  for a certain use."  711 F.3d at 1118-19.  Thus, Perez's fraud-by-omission claim existed only

10  by virtue of the FDCA disclosure requirements.  *Id.* at 1119.  "Here, while Plaintiffs' Sherman

11  Law claim draws its standards from federal labeling requirements, it is rooted in and 'exist[s]

12  by virtue of' California law."  *Kane,* 2013 WL 3703981 at *15.

13         Similarly, in *DeBons,* plaintiff only sued under the UCL and CLRA based on the

14  defendant's alleged violation of the FDCA.  There is no mention of the Sherman Law, the

15  basis of Plaintiffs' claims here.  The *DeBons* court recognized that "'state-law causes of

16  actions that parallel federal safety requirements' may escape implied preemption" if they are

17  grounded in traditional state tort law.  *2014 WL 12495351*, *4 (citing *Buckman*, 531 U.S. at

18  353)).  Fraud and unfair business practices are areas traditionally regulated by the States.

19  *Chamberlan,* 314 F. Supp. 2d at 959; *ARC Am. Corp*., 490 U.S. at 101.  Thus, *DeBons* is

20  inapplicable here.

21         Indeed, cases that have addressed claims that a company has alluded to FDA approval,

22  either directly or indirectly (as here), have found that the claims are not preempted.  For

23  example, in *Innovative Health Solutions, Inc., v. DyAnsys, Inc.,* 2015 WL 2398931 (N.D. Cal.

24  May 19, 2015), the Court held that plaintiff's UCL, FAL, and Lanham Act claims were not

25  preempted.  There, plaintiff alleged that consumers would be misled by the defendant

26  misrepresenting that its product had FDA approval.  *Id.* at *7 ("The Court finds that to the

27  extent plaintiff alleges that defendants have falsely represented that they obtained FDA

28  approval for their products, those claims are not precluded or preempted.").  Similarly, here,

1   Plaintiffs allege that consumers would be misled by Defendants misrepresenting that it has

2   FDA approval by citing to the FDA clearance or directly misrepresenting that it has FDA

3   approval.  In *Par Sterile Products, LLC, v. Fresenius Kabi USA LLC,* 2015 WL 1263041

4   (N.D. Ill. Mar. 17, 2015), the court held that the plaintiff's state law false advertising claims

5   were not preempted where the defendant

> injuriously misrepresents its product as FDA-approved by offering it for sale in certain marketing channels alongside FDA-approved generic drugs.  Whether Fresenius is actually deceiving consumers…by doing so remains in question at this early stage of the proceedings, but the dispute is of the sort with which the Lanham Act is concerned to the extent it involves deception of consumers as to the fact of whether a product carries the imprimatur of FDA approval, not whether the product is safe and effective enough to be approved by the FDA.

11   *Id.* at *4.

12       Here, as in *Par Sterile,* Plaintiffs do not allege that the Ultherapy procedure is not safe

13   and effective enough to be approved by the FDA.  Instead, Plaintiffs allege that Defendants'

14   representations involve deceiving consumers as to whether the Ultherapy procedure carries the

15   imprimatur of FDA approval.  As such, Plaintiffs' claims are not preempted.

16   **IV.    THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY**

17       Under the doctrine of primary jurisdiction, a court may refer an issue "within the

18   special competence of an administrative agency" to the agency, and stay or dismiss without

19   prejudice the underlying action pending agency review.  *Reiter v. Cooper,* 507 U.S. 258, 268-

20   269 (1993).  However, the doctrine "applies in a limited set of circumstances," and is "not

21   designed to secure expert advice from agencies every time a court is presented with an issue

22   conceivably within the agency's ambit." *Clark v. Time Warner Cable,* 523 F.3d 1110, 1114

23   (9th Cir. 2008)(citation and internal quotation marks omitted).  "Instead, it is to be used only if

24   a claim requires resolution of an issue of first impression, or of a particularly complicated

25   issue that Congress has committed to a regulatory agency." *Id.* (citation and internal quotation

26   marks omitted).

27       Indeed, in *PhotoMedex, Inc. v. Irwin,* 601 F.3d 919, 924-925 (9th Cir. 2010), described

28   below, the Ninth Circuit provided a description of a claim that would not be precluded: "it was

clear that an affirmative statement of approval by the FDA was required before a given product could be marketed and that no such FDA approval had been granted, a Lanham Act claim could be pursued for injuries…as a result of a false assertion that approval had been granted[.]"[4]  The facts of this case are analogous to *Zakaria,* 2015 WL 3827654.  In *Zakaria,* plaintiff alleged that defendant falsely or misleadingly represented that its baby formula qualified for or received approval for a health claim from the FDA.  *Id.,* at *3-4.  The court held that "Plaintiff raises neither an issue of first impression nor a complex one.  Instead, her claims turn on whether Defendant's representations concerning the health benefits of [the baby formula] and the FDA's approval of the formula were false or misleading."  *Id.* at *6. The court therefore determined that "[t]he primary jurisdiction doctrine does not apply."  *Id.* at *7. Similarly, the court in *Eclat Pharmaceuticals,* 2014 WL 12597594, held that the plaintiff's claims that the defendants falsely claimed they had obtained FDA approval on their products were not precluded by the primary jurisdiction doctrine.  *Id.* at *3.  Specifically, "the pursuit here of Plaintiff's claims that Defendants affirmatively misrepresented that the FDA had approved their products, will not interfere with the regulatory framework of the FDA."  *Id.*

The Ninth Circuit and its district courts have routinely held that consumer class actions based on unlawful, misleading and deceptive labeling and advertising, such as that here, fall squarely within an area that district courts are competent to address without the need to resort to the FDA to "secure [its] expert advice."  *See e.g., Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) ("The issue that this case ultimately turns on is whether a reasonable consumer would be misled by McNeil's marketing, which the district courts have reasonably concluded they are competent to address in similar cases."); *Zakaria v. Gerber Prod. Co*., 2015 WL 3827654, at *6 (C.D. Cal. June 18, 2015) ("Plaintiff raises neither an issue of first impression nor a complex one. Instead, her claims turn on whether Defendant's representations concerning the health benefits of Good Start Gentle and the FDA's approval of the formula were false or misleading."); *In re 5-hour ENERGY Marketing and Sales Practices Litigation*,

---

[4] "[T]he analysis for California unfair competition claims under Business and Professions Code section 17200 is the same as the analysis under the Lanham Act."  *Airwair Int'l Lt. v. Vans, Inc.,* 2013 WL 3786309, *7 (N.D. Cal. July 17, 2013).

2014 WL 5311272, at *15 (C.D. Cal. Sept. 4, 2014) ("Plaintiff's allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading . . . . [T]he mere existence of an agency investigation does not weigh in favor of a referral under the primary jurisdiction doctrine."); *Jones v. ConAgra Foods, Inc*., 912 F. Supp. 2d 889, 898–99 (N.D. Cal. 2012) ("[A]llegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading."); *Chacanaca v. Quaker Oats Co*., 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010) (denying motion to dismiss on grounds of primary jurisdiction doctrine where "plaintiffs advance a relatively straightforward claim: they assert that defendant has violated FDA regulations and marketed a product that could mislead a reasonable consumer" and that the issues raised in the case "do not entail technical questions or require agency expertise."); *Chavez v. Blue Sky Natural Beverage Co*., 268 F.R.D. 365, 374-375 (N.D. Cal. 2010) (primary jurisdiction doctrine did not apply to a deceptive labeling claim since "plaintiff's state law claims do not require an FDA ruling as to whether the [Food, Drug, and Cosmetic Act] ha[s] been violated, nor does adjudication of those claims require the FDA's particular expertise or uniformity in administration of labeling requirements").  Here, there is neither a complicated issue or one of first impression but, rather, an issue that courts regularly decide without referral to the FDA: whether Defendants' affirmative statements regarding FDA approval of Ultherapy, and statements inferring FDA approval, tend to be misleading and deceptive in light of the fact that Ultherapy is not approved by the FDA. Complaint ¶¶7, 16, 21, 34, 40-45.  Thus, their claims should not be excluded under the primary jurisdiction doctrine.

## V.     UCL, FAL AND CLRA CLAIMS MAY BE BASED ON DECEPTIVE BUT TECHNICALLY TRUE STATEMENTS

A claim that a business practice is "fraudulent" under the UCL, FAL, or CLRA can be based upon representations that deceive because they are untrue as well as representations that may be accurate on some level but nonetheless tend to mislead or deceive.  *Morgan v. AT & T Wireless Services, Inc*., 177 Cal. App. 4th 1235, 1255 (2009); *Williams v. Gerber Products*

1   *Co*., 552 F. 3d 934, 938 (9th Cir. 2008) ("The California Supreme Court has recognized 'that

2   these laws prohibit 'not only advertising which is false, but also advertising which [,] although

3   true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or

4   confuse the public'"). As such, "[a] perfectly true statement couched in such a manner that it

5   is likely to mislead or deceive the consumer, such as by failure to disclose other relevant

6   information, is actionable under the UCL[,]" FAL, and CLRA. *Id.* at 1255; *In re Ferrero*

7   *Litigation,* 794 F. Supp. 2d 1107, 1115 (S.D. Cal. June 30, 2011) ("A statement may be

8   deceptive and actionable under the UCL, FAL, and CLRA even though it is truthful.").

9         Moreover, "[t]he determination as to whether a business practice is deceptive is based

10   on the likely effect such practice would have on a reasonable consumer." *Klein v. Chevron*

11   *U.S.A., Inc.,* 202 Cal. App. 4th 1342, 1380-1381 (2012). Because California courts "have

12   recognized that whether a business practice is deceptive will usually be a question of fact," it

13   is a "rare situation in which granting a motion to dismiss is appropriate." *Williams, supra,* 552

14   F.3d at 938-939.

15         The case Defendants rely on, *PhotoMedex, supra,* 601 F.3d 919 is inapplicable to

16   Plaintiffs' UCL, FAL and CLRA claims. *PhotoMedex* involved efforts to bring Lanham Act,

17   15 U.S.C. §§ 1051 *et seq.,* claims for alleged FDCA violations. There, however, the claim

18   involved re-approval of a medical device and was based on the contention that a marketed

19   laser varied enough from an FDA-cleared laser as to require a new application for 510(k)

20   clearance. *Id.* Determining whether new 510(k) clearance was required under the FDA would

21   have required the court to interpret the provisions of the FDCA or, in other words, require the

22   court to assess the FDA's decision regarding its approval or clearance of a device rather than

23   the deceptiveness of the marketing and advertising of the device. *Id.* Indeed, as the court in

24   *PhotoMedex* stated, if "it was clear that an affirmative statement of approval by the FDA was

25   required before a given product could be marketed and that no such FDA approval had been

26   granted, a Lanham Act claim could be pursued for injuries…as a result of a false assertion that

27   approval had been granted[.]" *PhotoMedex,* 601 F.3d at 924-25. Thus, *PhotoMedex*

28   specifically provides for the claims alleged in Plaintiffs' complaint.

## VI.     PLAINTIFFS' CLAIMS ARE PLEADED WITH THE REQUISITE PARTICULARITY

Defendants argue that Plaintiffs failed to allege with sufficient particularity the deceptive representations that Plaintiffs relied upon in purchasing their Ultherapy treatments.  However, Defendants' argument fails because Plaintiffs specifically plead that Defendants' website, advertisements, and brochures viewed by Plaintiffs make the following specific deceptive claims indicating the FDA's endorsement of the Ultherapy system:

- "Of the three areas Ultherapy is FDA-approved to lift – skin on the brow, on the neck and under the chin – most people wanted the neck treated.

- FDA-approved to lift skin on the neck, brow and chin.

- Ultherapy is FDA-approved to lift skin under the chin.

- The only non-invasive procedure FDA-approved to lift skin on the brow, neck, and under the chin.

(Complaint ¶ 7.)

The purpose of Rule 9(b) is to provide "defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985); *see also Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations"); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §1298 (3d ed. 2004) ("Perhaps the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) . . . is the determination of how much detail is necessary to . . . enable [an adverse] party to prepare a responsive pleading").

Plaintiffs have clearly met this standard.  First, as Defendants point out, Plaintiffs both allege that they "saw, and relied upon, Defendants' advertising materials, including displays and brochures provided to Defendants to authorized medical practices for distribution to consumers, specifically regarding the representations stating that Ultherapy was "FDA

approved."  Complaint ¶¶16, 21.  Plaintiff Tryan identified the brochure that was provided to her, which states that Ultherapy is "[t]he only non-invasive procedure FDA-approved…".  Complaint ¶16.

Moreover, both Plaintiffs identify who provided the misrepresentations to them by alleging that Defendants distributed the marketing materials to authorized medical practices [Complaint ¶16, 21], and then identifying the medical practices where they received their treatments.  Complaint ¶¶15, 20.  Both Plaintiffs allege why the representations that the procedure was "FDA approved" was important to them: because they "reasonably believed that the FDA's approval assured the safety and efficacy of the Ultherapy devices and procedure."  Complaint. ¶¶18, 22.

Thus, Plaintiffs have identified more than adequate "circumstances constituting fraud" such that Defendants are aware of the bases for Plaintiffs' claims and can adequately respond.

## VII.  PLAINTIFFS' CLRA NOTICE SUFFICIENTLY PUTS DEFENDANTS ON NOTICE OF PLAINTIFFS' CLAIMS

Under the CLRA, plaintiffs must provide defendants at least 30 days' notice of the "particular alleged violations" of the CLRA and demand that the person "correct, repair, replace or otherwise rectify" the alleged violations in order to allege a claim for damages.  *Cal. Civ. Code* §1782.  Section 1782(a)(1) "requires notice to include 'the particular alleged violations of Section 1770,' but there is no case law describing how 'particular' the notice must be."  *Strickrath v. Globalstar, Inc.,* 527 F. Supp. 2d 992, 1001 (N.D. Cal. Sep. 25, 2007).  The purpose of the CLRA notice letter is "to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections[.]"  *Id.* at 1001-02.

Here, Plaintiffs' notice explicitly alleges the specific provisions of the CLRA that they allege Defendants violated: section 1770(a)(5) for representing the goods or services have characteristics or benefits which they do not have, (a)(7) for representing that the goods are of a particular quality or grade if they are of another, and (a)(9) for representing that Defendants advertised their goods and services with the intent not to sell them as advertised.  (Dkt No. 12-2, pp. 2, 6.)  Plaintiffs further assert that Defendants made false and misleading

1   "representations that create an impression of FDA approval where no such approval exists."

2   *Id.*  Plaintiffs also state that Defendants "advertise[s] that the Ultherapy system has been

3   'approved' and 'cleared' by the FDA, to assure consumers that the Ultherapy procedure is safe

4   and effective" and that consumers therefore "reasonably believed that the procedure had

5   official FDA approval from the FDA as to the safety and efficacy of Ultherapy."  *Id.* at pp. 3, 7.

6       In addition, "Defendants present no persuasive authority supporting a specificity

7   requirement for notice under Section 1782."  *Tribendis v. Life Care Centers of America, Inc.,*

8   2014 WL 12639322, * (C.D. Cal. Sep. 19, 2014).  In *Cattie v. Wal-Mart Stores, Inc.,* 504 F.

9   Supp. 2d 939 (2007), there was no dispute that the plaintiff first claimed damages, then gave

10  notice, and then amended the complaint after thirty days.  *Id.* at 950.  Thus, "[t]he only dispute

11  [was] whether this is permissible or whether failure to meet the notice requirement necessitates

12  dismissal."  *Id.* In *Ruszecki v. Nelson Bach USA Ltd.,* 2015 WL 6750980 (S.D. Cal. June 25,

13  2015), the court stated that the CLRA letter must list each particular *product* alleged to have

14  violated the CLRA.  In that regard, the Ninth Circuit has required strict compliance and

15  required a CLRA letter to specifically identify each product for which the plaintiff is seeking

16  damages.  *Id.* at *5.  Nothing in *Ruszecki,* however, requires that Plaintiffs identify each

17  particular *advertisement* making the misleading representation.  *Allen v. Similasan Corp.,* 2013

18  WL 5436648 (S.D. Cal. Sep. 27, 2013), involved misrepresentations that were not included in

19  the CLRA notice letter.  Here, however, Plaintiffs' notice letter is clear: Defendants

20  misrepresent that the Ultherapy system has FDA approval, or give the impression that the

21  system has FDA approval, to assure consumers that it is safe and effective.  *Ruszecki* and *Allen*

22  are therefore inapposite.

23      Plaintiffs' notice letter "satisfies the pre-filing notice requirement because it explicitly

24  alleges violations of the CLRA[,]…[it] explains in plain language the conduct that Plaintiffs

25  allege violates the statute[,]…[it] lists [three] sub-sections of the CLRA, and asks for specific

26  corrections and remedies.  The content of the letter suffices to put [Defendants] on notice of

27  the alleged CLRA violations."  *Easysaver,* 737 F. Supp. 2d at 1178-1179; *see also Azimpour v.*

28  *Sears, Roebuck & Company*, 2017 WL 1496255 at *11 (S.D. Cal., Apr. 26, 2017) ("[t]he

CLRA letter asserts specific violations under three subsections of the CLRA, describes Defendant's allegedly unlawful 'sale' pricing scheme that deceives consumers into purchasing items based on the false belief they are receiving a bargain, and demands that Defendant remedy its unlawful behavior. (*See* CLRA letter.) This is sufficient notice under the CLRA.").[5]

## VIII.   UNDER NINTH CIRCUIT AUTHORITY, PLAINTIFFS HAVE ARTICLE III STANDING TO PURSUE INJUNCTIVE RELIEF

In *Davidson v. Kimberly-Clark Corporation*, 873 F.3d 1103 (9th Cir. 2017)[6] ("*Davidson*"), the Ninth Circuit resolved a split among the district courts and established Circuit law regarding a consumer's standing to seek injunctive relief for false and misleading advertising.  There, plaintiff sought injunctive relief (among other remedies) on her claims brought pursuant to the UCL, FAL and CLRA.  She alleged that defendants' marketing of pre-moistened wipes as "flushable" was deceptive because they were not in fact suitable for flushing down a toilet. *Davidson*, 873 F.3d at 1107.  The district court "granted [defendants'] … motion to dismiss Davidson's injunctive relief claims, finding that Davidson lacked standing to seek injunctive relief because she was unlikely to purchase Kimberly–Clark's flushable wipes in the future." *Id.* at 1109.

Davidson alleged in her First Amended Complaint that although "she has never again purchased flushable wipes" she "'continues to desire to purchase wipes that are suitable for disposal in a household toilet,' and 'would purchase truly flushable wipes manufactured by [Kimberly–Clark] if it were possible to determine prior to purchase if the wipes were suitable to be flushed.'" *Davidson*, 873 F.3d at 1108.  On appeal, Davidson argued that she alleged a cognizable injury that establishes Article III standing to seek injunctive relief because she

---

[5] Defendants' introduction asserts that Plaintiffs denied Defendants the opportunity to remediate the purported violations before filing suit. [Dkt. No. 12, p. 4.] Defendants do not, however, address this argument in the substantive portion of their motion and assert no authority to support it.  Moreover, Defendants' response to Plaintiffs' CLRA notice letters failed to address three of the four requests for relief contained therein.  Defendants' RJN, Exh. C.  Thus, Defendants' letter does not provide "an appropriate correction, repair, replacement, or other remedy." *Cal. Civ. Code* §1782(b). Nor does it state that Defendants will provide, or agree to provide, each of the remedies requested within a reasonable time. *Id.* As such, Defendants were not denied the opportunity to remediate.

[6] In *Davidson*, a Petition for Rehearing *En Banc* was filed on November 3, 2017.

1   would be unable to rely on the label "flushable" when deciding whether to purchase

2   Kimberly–Clark's wipes in the future.[7]  *Id.* at 1112-1113.

3         After reviewing the split in authority in the district courts, the Ninth Circuit declared

4   that "[t]oday, we resolve this district court split in favor of plaintiffs seeking injunctive relief."

5   *Davidson*, 873 F.3d at 1115.  Specifically, the Court held that a "previously deceived

6   consumer" may "have standing to seek an injunction against false advertising or labeling, even

7   though the consumer now knows or suspects that the advertising was false at the time of the

8   original purchase, because the consumer may suffer an 'actual and imminent, not conjectural

9   or hypothetical' threat of future harm." *Id.*  This Ninth Circuit holding invalidates the line of

10  district court cases that have held that the "plaintiff's knowledge of the alleged unlawful or

11  misleading conduct precludes standing for injunctive relief under Article III."  Now, "a

12  previously deceived consumer may have standing to seek injunctive relief."  *Id.* at 1116.

13        Plaintiffs could foreseeably choose to undergo an Ultherapy procedure in the future

14  because there are multiple scenarios in which the Ultherapy procedure may become "FDA

15  approved."  For example, Defendants must submit an additional 510(k) clearance application

16  every time they modify the Ultherapy system or add/modify an intended use.  On any of those

17  occasions, they may file a Premarket Approval application instead of a 510(k) clearance

18  simply because they want to market the device as FDA-approved at that point or because they

19  have enough scientific evidence at that point to be considered a Class I or Class II device

20  exempt from premarket notification requirements.[8]  Or, the FDA could determine future

21  Ultherapy System devices are not "substantially similar" to the Class II device it linked its

22  510(k) clearance application to, requiring Defendants to either file a new 510(k) clearance

23  application *or* a PMA application in order to continue marketing the product.[9]  Alternatively,

24  the FDA has the option to issue an administrative order requiring certain devices that have

25

26       [7] In reversing the district court's order, the Ninth Circuit did not reach Davidson's
    second argument.  *Id.*

27       [8] https://www.fda.gov/downloads/MedicalDevices/DeviceRegulationand
    Guidance/GuidanceDocuments/UCM514771.pdf

28       [9] https://www.fda.gov/downloads/medicaldevices/deviceregulationand
    guidance/guidancedocuments/ucm284443.pdf.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT

1   been previously cleared through the 510k process to also go through the premarket approval

2   process.[10]  Further, if, at any point, Defendants want the FDA to reclassify the device as a

3   Class I device that is subject to "general controls" rather than "specific controls," it can also

4   file a PMA application.

5         These factual scenarios demonstrate that Plaintiffs' request for injunctive relief falls

6   squarely within the decision in *Davidson,* holding that a previously deceived consumer can

7   have standing to pursue injunctive relief.  Indeed, "the threat of future harm may be the

8   consumer's plausible allegations that she will be unable to rely on the product's advertising or

9   labeling in the future, and so will not purchase the product although she would like to" or "that

10  she might purchase the product in the future, despite the fact it was once marred by false

11  advertising or labeling, as she may reasonably, but incorrectly, assume the product was

12  improved."  *Davidson,* 873 F.3d at 1115.[11]

13  **IX.    CONCLUSION**

14        For the foregoing reasons, Plaintiffs respectfully submit the motion to dismiss should

15  be denied.

16

17  Dated:  January 11, 2018                    Respectfully submitted,

18                                              Capstone Law APC

19                                        By: /s/ Bevin Pike

20                                              Bevin Allen Pike
                                                Robert K. Friedl
21                                              Trisha K. Monesi

22                                              Attorneys for Plaintiffs
                                                Georgia Tryan and Marilyn Echols

23

24

25

26

27  ───────────────────────
    [10] *Id.* at fn. 3.
    [11] If the Court dismisses any portion of the Complaint, Plaintiffs respectfully request
28  leave to amend.  *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992) (leave to
    amend is only properly denied "where the amendment would be futile").