1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   GEORGIA TRYAN and MARILYN              No. 2:17-cv-02036-MCE-CMK
     ECHOLS, as individuals, and on behalf
12   of other members of the general public
     similarly situated,
13                                          **MEMORANDUM AND ORDER**
                         Plaintiffs,
14
           v.
15
     ULTHERA, INC., a Delaware
16   corporation; and MERZ NORTH
     AMERICA, INC., a Delaware
17   corporation,

18                         Defendants.

19

20         Through this action, Plaintiffs Georgia Tryan and Marilyn Echols, on behalf of

21   themselves and others similarly situated, (collectively "Plaintiffs") allege that Defendants

22   Ulthera, Inc. and Merz North America, Inc., engaged in false and misleading marketing

23   practices concerning their sale of an ultrasound device designed to mitigate skin

24   wrinkles.  Plaintiffs' Complaint seeks relief under three California statutes:  1) the

25   Consumers Legal Remedies Act, California Civil Code § 1750, et seq. ("CLRA"); 2) the

26   False Advertising Act, Business and Professions Code § 17500, et seq. ("FAL") and

27   3) the Unfair Competition Law California Business and Professions Code § 17200

28   et seq. ("UCL").  Each of these statutory claims, in turn, are predicated on purported

                                             1

violations of 21 C.F.R. § 807.97, a regulation promulgated by the Federal Food & Drug Administration ("the "FDA") under the auspices of the Federal Food, Drug, and Cosmetic Act ('the "FDCA"), as well as under California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"), Cal. Health & Safety Code §§ 109875-111915. Federal jurisdiction is based on the Class Action Fairness Act, 28 U.S.C. § 1332.

Presently before the Court is Defendants'[1] Motion to Dismiss Plaintiffs' Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendant's Motion is premised on the contention that Plaintiffs' CLRA, FAL, and UCL causes of action are all impliedly preempted by the FDCA and should consequently be directed to the FDA for interpretation of whether claims made in marketing the ultrasound device in question were indeed false and/or misleading. Defendant further contends that Plaintiffs' claims are not pled with the requisite factual specificity in any event. For the reasons set forth below, Defendant's Motion to Dismiss is DENIED in part and GRANTED in part.[2]

## BACKGROUND

"Ultherapy" is a non-surgical cosmetic procedure that involves the use of ultrasound procedures to tighten skin tissue and reduce the appearance of wrinkling. The device used to perform Ultherapy, the so-called Ulthera System, is a Class II medical device used for the treatment of skin on the neck, under the chin, on the eyebrow, and on the chest. The Ulthera System was developed by Ulthera, Inc., which was acquired by Defendant Merz North America, Inc. in July 2014 and has since operated as a wholly-owned subsidiary of Merz. Physicians and other medical

---

[1] The initial moving defendants included both named Defendants, Ulthera, Inc., and Merz North American, Inc. On June 20, 2018, however, Plaintiffs requested that Ulthera, Inc. be dismissed as a Defendant to this lawsuit and that dismissal was entered, without prejudice, on June 29, 2018. ECF No. 27. Consequently, all references to "Defendant" through the remainder of this Order refer only to Defendant Merz North America, Inc.

[2] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

professionals purchase the Ulthera System from Defendant Merz and administer Ultherapy treatment using the System.

The named Plaintiffs both purchased Ultherapy procedures from their medical providers in 2015. Both Plaintiffs allege that prior to that purchase "they saw, and relied upon, Defendant's advertising materials, including displays and brochures provided by Defendant to authorized medical practices for distribution to consumers" and specifically point to "representations stating that Ultherapy was 'FDA approved.'" Pls.' Compl., ¶¶ 16, 21. Both Plaintiffs further assert that the FDA's purported approval was important "in deciding to undergo Ultherapy because [they] reasonably believed that the FDA's approval assured the safety and efficacy of the Ultherapy devices and procedure." Id. at 18, 21.

Plaintiffs claim that Defendant's advertising materials failed to "ever explain or clarify that Ultherapy [had] only been reviewed by the FDA in accordance with premarket notification requirements" (so-called "510(k) clearance"[3]), and in fact had never received the FDA's official "approval" or endorsement as to the safety and efficacy of Ultherapy procedures. Id. at 8.[4] Plaintiffs claim that had they known at the time they purchased Ultherapy treatment that the procedure was not FDA-approved they "would have paid less for the treatment, declined to purchase the treatment, and/or considered alternative treatments that were FDA approved." Id. at 19.

Plaintiffs claim that Defendant used a variety of advertising media, including traditional and online radio advertising, digital advertising, and print and social media in order to promote Ultherapy. In all these direct-to-consumer channels, according to Plaintiffs, Defendant claimed that Ultherapy has "been "FDA approved" and "FDA

---

[3] Section 510(k) of the FDCA allows a manufacturer like Defendant to submit a summary to the FDA describing how its medical device is substantially equivalent to a pre-1976 device. If the FDA agrees it issues a clearance to that effect.

[4] The FDA regulates the introduction of medical devices into interstate commerce in accordance with the Medical Device Amendments ("MDA") to the FDCA. Under the MDA, the FDA can review products and allow them to go to market either through the comprehensive evaluation entailed by the Premarket Approval Process ("PMA") or the more cursory review of a premarket clearance under Section 510(k).

1  cleared". By using the terms "FDA approved" and "FDA cleared" interchangeably

2  throughout their marketing materials,[5] Plaintiffs claim that Defendant misbranded

3  Ultherapy pursuant to 21 C.F.R. § 807.97, which provides:

> Submission of a premarket notification in accordance with this subpart, and a subsequent determination by the commissioner that the device intended for introduction into commercial distribution is substantially equivalent to a device in commercial distribution before May 28, 1976, or is substantially equivalent to a device introduced into commercial distribution after May 28, 1976, that has subsequently been reclassified into class I or II, <u>does not in any way denote official approval of the device. Any representation that creates an impression of official approval of a device because of complying with the premarket notification regulations is misleading and constitutes misbranding</u>.

11  (emphasis added).

12      In essence then, clearance under Section 510(k) allows a manufacturer to market

13  a device that the FDA determines is "substantially equivalent" to another product that

14  was previously cleared or approved by the FDA. 21 U.S.C. § 360c(i)(1); 21 U.S.C.

15  § 807.92; <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 479 (1996).

16      In June 2011, after Ulthera submitted the required premarket notification, the FDA

17  found that the Ulthera System was substantially equivalent to pre-1976 Class II medical

18  devices and consequently qualified for clearance under Section 510(k). In issuing that

19  clearance, however, Plaintiffs allege that "at no point did the FDA perform the rigorous,

20  independent testing to ensure the safety and effective of Ultherapy resulting from the

21  Premarket Approval procedures and, as such, the FDA has not endorsed or approved

22  the safety and efficacy of Ultherapy." Pls.' Compl, ¶ 39.

23      Section 510(k) clearance is relatively routine and by its terms does not denote any

24  FDA "approval" as to the efficacy of a medical device. It requires little information, rarely

25  elicits a negative response from the FDA, and gets processed relatively quickly. <u>Lohr</u>,

---

26      [5] Plaintiffs' Complaint, at ¶ 41, incorporates several specific examples of Defendant's advertising

27  using the term "FDA-approved" to describe Ultherapy. Defendant's Request for Judicial Notice, at Exhibit D, contains further examples of advertising materials using both "FDA-approved" and "FDA-cleared." Defendant's Request for Judicial Notice under Federal Rule of Evidence 201 in this regard is

28  GRANTED.

1    518 U.S. at 479.  PMA, on the other hand, is a rigorous process requiring substantial

2    time and testing. It requires that the manufacturer provide the FDA with proof that the

3    submitted device is both safe and effective, through an exhaustive and comprehensive

4    device-specific review.  21 U.S.C. § 360e.  Approval is granted by the FDA only where

5    there is a reasonable assurance of the device's safety and effectiveness.  Id.  Plaintiffs'

6    Complaint details the PMA process in this regard, alleging that the process requires a

7    manufacturer to give the FDA "all information" about the device submitted for approval,

8    including detailed information concerning its design, manufacture, use and labeling.

9    Then, prior to giving PMA approval, the FDA conducts its own independent testing of the

10   device.  According to Plaintiffs, only if the FDA examiner finds there is sufficient scientific

11   evidence demonstrating the safety and effectiveness of a device for its intended use can

12   the device's manufacturer use the term "FDA-approved" in marketing the device.  See

13   Pls.' Compl, ¶ 37.

14          Ultherapy only had Section 510(k) clearance; it never obtained PMA approval

15   and, according to Plaintiffs, the advertising they relied on implied that it had in fact been

16   "endorsed" by the FDA.[6]  Plaintiffs claim that this violates 21 C.F.R. § 807.97 as

17   enumerated above.  Plaintiffs further claim that California's Sherman Law incorporates

18   and mirrors the provisions of the FDCA, including 21 C.F.R. § 807.97.  Plaintiffs also

19   point out that the Sherman Law makes it "unlawful for any person to disseminate any

20   false advertisement of any food, drug, device or cosmetic.  An advertisement is false if it

21   is false or misleading in any particular." Pls.' Compl., ¶ 4, citing Cal. Health & Safety

22   Code § 110390.  According to Plaintiffs, the alleged Sherman Law violations they assert

23   "serve as predicate violations" for the UCL, FAL, and CLRA claims they assert, and

24   entitle them to seek relief thereunder.  Id.

25   ///

26          [6] Defendant, on the other hand, appears to allege that before it acquired Ulthera, Ulthera
     published marketing materials using the term "FDA-approved" rather than "FDA-cleared".  Defendant
27   claims that Plaintiffs have not currently identified marketing materials since 2013 that describe Ultherapy
     as FDA-approved, and Defendant claims it has advised Plaintiffs that it has made and continues to make
28   efforts to remove materials from view and/or circulation.

5

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."

1  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge

2  that actual proof of those facts is improbable, and 'that a recovery is very remote and

3  unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

4         A court granting a motion to dismiss a complaint must then decide whether to

5  grant leave to amend.  Leave to amend should be "freely given" where there is no

6  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

7  to the opposing party by virtue of allowance of the amendment, [or] futility of the

8  amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

9  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

10 be considered when deciding whether to grant leave to amend).  Not all of these factors

11 merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

12 carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

13 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

14 "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

15 Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

16 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

17 1989) ("Leave need not be granted where the amendment of the complaint . . .

18 constitutes an exercise in futility . . . .")).

19

20                               **ANALYSIS**

21

22     **A.     Implied Preemption**

23         In 1976, by enacting the MDA to the FDCA, Congress "swept back state

24 obligations and imposed a regime of detailed federal oversight."  Perez v. Nidek Co.,

25 Ltd., 711 F.3d 1109, 1117 (9th Cir. 2013) (quoting Riegel v. Medtronic, Inc., 522 U.S.

26 312, 316 (2008).  The MDA includes an "express preemption provision" that generally

27 bars states from "establish[ing[ or contin[uing] in effect with respect to a device intended

28 for human use any requirement . . . which is different from, or in addition to, any

requirement applicable under [the FDCA] to the device, and . . . relates to . . . a requirement applicable to the device under [the FDCA]." Id. (quoting 21 U.S.C. § 360k(a)).  In addition to this express preemption, the Supreme Court has found that to the extent that certain state laws "conflict[] with the federal statutory scheme, they may be impliedly preempted as well.  Id. at 1119 (quoting Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 348 (2001)).  Here, while not asserting that Plaintiffs' claims are different from FDCA requirements so as to be subject to express preemption, Defendant nonetheless asserts that their claims are impliedly preempted.  According to Defendant, because Plaintiffs' claims rely entirely on the FDCA (by alleging, for example, that Defendant's use of the phrases "FDA-approved" or "FDA-cleared" was misleading), their attempt through this lawsuit assert state claims pursuant to California consumer laws is impliedly preempted.

Although the Ninth Circuit has recognized that there is a "narrow gap" through which a state law claim must fit in order to avoid preemption by the FDCA (Perez, 711 F.3d at 1120), a state law claim can nonetheless survive preemption if the state law duty merely "parallels a federal-law duty" under the FDCA.  See Stengel v. Medtronic, Inc., 704 F.3d 1224, 1228 (9th Cir. 2013).  Plaintiffs' complaint here alleges just such a parallel duty.  As indicated above, it claims that California's Sherman Law "incorporates and mirrors the FDCA, including without limitation, 21 C.F.R. § 807.97."  Pls.' Compl, ¶ 4.  The Complaint goes on to assert that "these regulatory and statutory violations, among others, serve as predicate violations for Plaintiffs' UCL, FAL and CLRA claims asserted therein" and consequently makes clear the linkage between the federal and state law duties and Plaintiffs' asserted causes of action.[7]

The relationship identified by Plaintiffs between the federal and state law duties is borne out by the respective statutes.  The Sherman Law, at California Health & Safety Code § 110110(a), provides in pertinent part that "[a]ll regulations relating to . . .

---

[7] Defendant's claim that "[t]he sole basis for Plaintiffs' Complaint is that Defendants allegedly misbranded Ultherapy pursuant to 21 C.R.R. § 807.97" (ECF No. 12, 7:19-21) is accordingly incorrect inasmuch as it is clearly also premised on the Sherman Law.

applications for premarket approval of new devices, adopted pursuant to [the FDCA] shall be the new drug and new device application regulations of this state." Consequently, the state law by its terms incorporates the provisions of 21 C.F.R. § 807.97, which states that premarket clearance of a medical device under the FDCA "does not in any way denote official approval of the device. Any representation that creates an impression of official approval of a device because of complying with premarket notification regulations is misleading and constitutes misbranding." The Sherman Law also goes on to make it unlawful "for any person to disseminate any false advertisement" as to any medical device, stating that an "advertisement is false if it is false or misleading in any particular." Cal. Health & Safety Code § 110390. This also mirrors the provisions of the FDCA. In sum, then, because Plaintiffs' claims rely upon state law duties under the Sherman Law that parallel the federal duties imposed under the FDCA, they are not impliedly preempted by the FDCA. See, e.g., Otero v. Zeltiq Aesthetics, Inc., 2017 WL 9538711 at *5 (C.D. Cal. Nov. 21, 2017).

It should also be noted that FDCA regulations appear to directly preclude preemption here given the fact that all of Plaintiffs' causes of actions are for violations of California consumer protection laws; namely the CLRA, the FAL and the UCL. 21 C.F.R. § 808.1(d)(1) provides that such state law claims alleging "unfair trade practices in which the requirements are not limited to [medical] devices" are not preempted by the FDCA. See, e.g., Cel-Tech Comms. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (UCL's reach is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law."). Significantly, too, the Supreme Court agrees that the FDCA does not preempt state statutes of general applicability like those asserted herein. Lohr, 518 U.S. at 500-01. Lohr also makes it clear that the Section 510(k) clearance obtained by defendants does not somehow preempt state law consumer claims, stating that "[t]here is no suggestion in either the statutory scheme or the legislative process that [said clearance] process was intended to do anything . . . [to exclude] the possibility that the manufacturer of the device would

9

have to defend itself against [such] state-law claims." Id. at 494.  In Innovative Health Solutions, Inc. v. DyAnsys, Inc., 2015 WL 2398931 (N.D. Cal. May 19, 2015), under circumstances analogous to those involved here, the Northern District applied this reasoning to UCL and FAL claims, finding that "to the extent plaintiff alleges that defendants have false represented that they obtained FDA approval for their products, those claims are not precluded or preempted." Id. at *7.  Defendant's Motion to Dismiss is denied on this point.

### B.    Alleged Misrepresentations

In addition to arguing for implied preemption, Defendant also asserts that the FDA should in any event be permitted to resolve the question of whether, and to what extent, their alleged misrepresentations are indeed actionable.  Defendant reasons that since it is the FDA who determined whether a medical device like Ultherapy is "FDA approved" or "FDA cleared," it must determine just what those terms mean and further decide if Defendant misrepresented the FDA's imprimatur of its device.  As such, Defendant cites the so-called doctrine of "primary jurisdiction" to urge the court to exercise its discretion and dismiss the case in order to allow the FDA to make any necessary findings.

The doctrine of primary jurisdiction applies where there is: "(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration. . . " Clark v. Time Warner Cable, 523 F.3d 1110, 1115 (9th Cir. 2008) (internal quotation marks and citations omitted).

According to Defendant, FDA approval or clearance of a medical device like Ultherapy falls squarely within the FDA's regulatory jurisdiction such that the court should abstain from deciding "policy questions that should be addressed in the first instance by the agency with authority over the relevant industry rather than by the judicial branch." Id. at 1114.  Provided the issue underlying a lawsuit is within the special competence of the agency, the court may accordingly stay or dismiss without prejudice

10

1  said suit without prejudice pending agency review.  <u>Reiter v. Cooper</u>, 507 U.S. 258, 268-
2  69 (1993).

3       As Plaintiffs point out, however, the primary jurisdiction doctrine should be applied
4  only in a "limited set of circumstances," and is "not designed to secure expert advice
5  from agencies every time a court is presented with an issue conceivably within the
6  agency's ambit."  <u>Clark</u>, 523 F.3d at 1114.  Instead, it should be invoked "only if a claim
7  requires resolution of an issue of first impression, or of a particularly complicated issue
8  that Congress has committed to a regulatory agency."  <u>Id.</u>

9       Ninth Circuit courts have consistently found that cases like this one do not qualify
10  under this rigorous standard.  Instead, consumer class actions based on unlawful,
11  misleading and/or deceptive labeling and advertising are areas the courts can address
12  without the need to "secure [the FDA's] expert advice."  <u>See, e.g.,</u> <u>Reid v. Johnson &</u>
13  <u>Johnson</u>, 780 F.3d 952, 967 (9th Cir. 2015) ("The issue that this case ultimately
14  determines is whether a reasonable consumer would be misled by McNeil's marketing,
15  which the district courts have reasonably concluded they are competent to address in
16  similar cases."); <u>Zakaria v. Gerber Products Co.,</u> 2015 WL 3827654 at *6 (C.D. Cal.
17  June 18, 2015) ("Plaintiff raises neither an issue of first impression nor a complex one.
18  Instead, her claims turn on whether Defendant's representations concerning the health
19  benefits of Good Start Gentle and the FDA's approval of the formula were false or
20  misleading."); <u>In re 5-hour ENERGY Marketing and Sales Practices Litigation</u>, 2014 WL
21  5311272 at *14 (C.D. Cal. Sept. 4, 2014) ("Plaintiff's allegations of deceptive labeling do
22  not require the expertise of the FDA to be resolved in the courts, as every day courts
23  decide whether conduct is misleading. . . [T]he mere existence of an agency
24  investigation does not weigh in favor of a referral under the primary jurisdiction
25  doctrine.").

26       Having determined that the primary jurisdiction doctrine does not divest this Court
27  of authority to adjudicate the case, we turn to Defendant's substantive claim that
28  because the FDA did indeed issue a Section 501(k) clearance as to the Ultherapy

device, any claim that it was "FDA-cleared" is both technically correct and not actionable. Defendant consequently asks the Court to strike or dismiss any references in the Complaint to the Ulthera System being cleared on grounds that any such allegations were completely true.

Here, however, Plaintiffs claim that Defendant used the clearance they obtained to specifically allege that Ultherapy was "FDA-approved" and allege that Defendant used the terms "FDA-approved" and "FDA-cleared" interchangeably in its marketing program to suggest that Ultherapy had obtained the FDA's official endorsement. Pls.' Compl, ¶ 9. Plaintiffs' Complaint goes on to include multiple examples of this practice from Ulthera's official Facebook page, from its website, and from advertisements and marketing materials provided to customers. Id. at ¶¶ 7, 41. According to Plaintiffs, these practices mislead and confuse the public, especially since the terms "approved" and "cleared" are used "interchangeably, sometimes within the same marketing materials" without any attempt to "clarify, explain, or even attempt to inform consumers that "FDA clearance" is not equivalent to the widely known and understood "FDA approval." Id. at ¶ 41.

Consequently, the gravamen of Plaintiffs' claims is that Ulthera's FDA clearance, even if true, is improperly used to suggest that the product had the FDA's seal of approval, which it did not. As Plaintiffs point out, a claim that a business practice is "fraudulent" under the UCL, FAL, or CLRA can properly be based not only on patently untrue representations but also on representations that may be accurate on some level but nonetheless can mislead or deceive. Morgan v. AT&T Wireless Services, Inc., 177 Cal. App. 4th 1235, 1255 (2009); Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008) ("The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."). Therefore, "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer… is actionable. . .". Morgan, 177 Cal. App. 4th at 1255; in re Ferrero Litigation, 794 F. Supp. 2d 1107, 1115 (S.D. Cal.

12

June 30, 2011 ("A statement may be deceptive and actionable under the UCL, FAL and CLRA even though it is truthful."). Defendant's pleading challenge to the use of "FDA-cleared" in Ulthera's advertising thus fails. Moreover, since whether a business practice is deceptive is ordinarily a question of fact in any event, it would be a "rare situation" in which granting a motion like that presented here would be appropriate. Williams, 552 F.3d at 938-39.

## C. Heightened Pleading Standards

Defendant next argues that since all of Plaintiffs' allegations sound in fraud, they must satisfy the heightened pleading standard of Rule 9(b) applicable to fraud claims and fail to cite the particularized facts necessary to support their contention that they relied on any specific misrepresentations.

To satisfy the requirements of Rule 9(b), "[a]verments of fraud must be accompanied by the 'who, what, when, where and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997). Defendant is correct in claiming that where, as here, Plaintiffs' CLRA, FAL and UCL claims are predicated on fraud "they are subject to Rule 9(b)'s heightened pleading standard." Harris v. Las Vegas Sands L.L.C., 2013 WL 5291142 at *1 (C.D. Cal. Aug. 16, 2013) (citing Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

Defendant alleges that Plaintiffs' allegations here are insufficient under Rule 9(b) because neither Plaintiff has alleged exactly "who" provided them with misleading advertising, even though Plaintiffs state that displays and brochures were provided by Defendant to Ultherapy-authorized medical practices where Plaintiffs presumably saw them. Pls.' Compl, ¶¶ 16, 21. Defendant goes on to aver that the "when" prong of the analysis is also lacking because Plaintiffs, while alleging that they saw the advertisements "prior to purchasing" the Ultherapy procedures, fail to provide specific dates or any additional detail. Id. Defendant also asserts that neither Plaintiff explains "why" FDA approval or clearance was important in their decision to purchase Ultherapy,

13

despite the fact that the Complaint contends that had Plaintiffs known that the product was not in fact approved, they "would have paid less for the treatment, declined to purchase the treatment, and/or considered alternative treatments that were FDA approved." Id. at ¶¶ 19, 23.

The purpose of Rule 9(b) is to provide "defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charges and not just deny that they have done anything wrong." Semegen v. Wediner, 780 F.2d 727, 731 (9th Cir. 1989); see also Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.").

Plaintiffs' pleading survives scrutiny in this regard. As indicated above, both named Plaintiffs allege that prior to purchasing Ultherapy they "saw, and relied upon, Defendants' advertising materials, including displays and brochures provided by Defendants to authorized medical practices for distribution to consumers," and specifically relied on representations that Ultherapy was "FDA approved." Pls.' Compl., ¶¶ 16, 21. Both Plaintiffs also identify the medical practices where they received their Ultherapy treatments and both state they received treatments in late 2015. Id. at ¶¶ 15, 20. Finally, both Plaintiffs allege that FDA approval was important because they "reasonably believed that the FDA's approval assured the safety and efficacy of the Ultherapy devices and procedure." Id. at ¶¶ 18, 22.

Under these circumstances, Plaintiffs have more than adequately identified the basis for their fraud-based claims such that Defendant can adequately respond to those claims. Defendant's request to dismiss the allegations of Plaintiffs' claim on that basis is therefore denied.

## D. Pre-Suit Notice Requirements

Plaintiffs' First Cause of Action alleges that Defendant's allegedly deceptive acts and practices violated the CLRA by failing to disclose and misrepresenting the true

14

nature of the FDA's review of Ultherapy and its efficacy. Under the CLRA, a plaintiff must provide at least 30 days' notice of the "particular alleged violations" of the CLRA and demand that the potential defendant "correct, repair, replace or other rectify" the alleged violations before bringing a suit for damages. Cal. Civ. Code § 1782. While there is no case law authority describing just how particular the notice must be, the purpose of a notice letter under the CLRA is "to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections" to be made. Strickrath v. Globalstar, Inc., 527 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2007).

Here, while Defendant concedes the Plaintiffs provided Defendants with notice of their alleged CLRA violations, they allege that the August 2017 notices failed to comply because they only vaguely referred to Defendant's "advertisements, including social media ads and brochures" stating that Ultherapy is "FDA-cleared" or FDA-approved." See Def.'s Request for Judicial Notice ("RJN"), ECF No. 12, Exs. "A" and "B".[8] Defendant claims that because Plaintiffs failed to otherwise describe the alleged marketing materials with particularity, their notices did not comply with the CLRA's pre-suit notice requirements as to each alleged violation of the CLRA. Defendant makes this claim despite the fact that after receiving Defendant's August 30, 2017, response to Plaintiffs' CLRA notice letters (RJN, Ex. "C"), which alleged that Plaintiffs failed to sufficiently identify or provide copies of the marketing materials alleged to be in violation of the CLRA, Plaintiffs provided on September 22, 2017, copies of two specific examples of Ultherapy being advertised as "FDA-approved." RJN, Ex. D. Although the provision of actual copies of the advertisements was less than 30 days prior to the September 30, 2017, date when Plaintiffs' lawsuit was filed, it supplemented the otherwise adequate notice which was provided during the requisite time period prior to the filing of the Complaint. In any event, the gravamen of Plaintiffs' allegations was clear from the notice

---

[8] Defendant's Request for Judicial Notice as to said Exhibits under Federal Rule of Evidence 201 is hereby GRANTED. Unless referred to in this Memorandum and Order, the Court did not rely on additional exhibits sought to be judicially noticed and therefore need not rule on those requests and declines to do so.

letters themselves; namely, that Defendant misrepresented that the Ultherapy system had FDA approval, or gave the impression that the system had such approval in order to assure consumers it was safe and effective. Consequently, the letters adequately put Defendant on notice of the CLRA violations being asserted and satisfied the prerequisites for bringing suit in that regard.

### E. Standing to Assert Injunctive Relief

In order for a court to exercise subject matter jurisdiction, a plaintiff must have Article III standing. Cetacean Community v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004). In addition, standing to seek injunctive relief, as Plaintiffs claim here, depends upon "a realistic threat of future injury." Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1040 (9th Cir. 1999). Defendant contends that Plaintiffs lack standing to seek injunctive relief, arguing that there is no realistic threat of future injury because Plaintiffs cannot possibly show that they will again rely on advertisements that Ultherapy is "FDA-approved" because they have actual knowledge it is not. According to Defendant, Plaintiffs therefore "cannot plausibly allege or possibly prove that they will, in the future, rely on these alleged misrepresentations to their detriment." Def's. Mot., 16:17-18.

Defendant correctly points out that neither allegations of possible future injury, or past exposure to illegal conduct in itself, unaccompanied by any continuing, present adverse effects, is insufficient to confer the standing required for injunctive relief. Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013); O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974). Defendant nonetheless relies on a 2017 Ninth Circuit decision, Davidson v. Kimberly-Clark Corp., 873 F.3d 1103 (9th Cir. 2017) that, like the case at bar, addressed consumer standing to seek injunctive relief for false and misleading advertising. In that case, Jennifer Davidson, like Plaintiffs herein, sought injunctive relief based on claims brought pursuant to the UCL, FAL and CLRA. The allegations in Davidson concerned defendants' marketing of pre-moistened wipes as "flushable" where they were not in fact suitable for disposal down a toilet. Id. at 1107. The district court had granted dismissal of the injunctive relief claims on grounds that

16

Ms. Davidson lacked standing to assert injunctive relief once she discovered that the wipes were not in fact suitable for flushing and was accordingly unlikely to purchase the product in the future.  Id. at 1109.  Significantly, however, Davidson had alleged in her First Amended Complaint that she continued "to desire to purchase wipes that are suitable for disposal in a household toilet" and "would purchase truly flushable wipes . . . if it were possible to [make that determination] prior to purchase."  Davidson, 873 F.3d at 1108.

On appeal, Ms. Davidson alleged that she had articulated a cognizable injury giving her standing to seek injunctive relief under Article III because she would be unable to rely on the label "flushable" when deciding whether to purchase the wipes in the future.  Id. at 1109.   After reviewing the split in authority in the district courts, the Ninth Circuit "resolved[d] the district court split in favor of plaintiffs seeking injunctive relief", holding that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm."  Id. at 1115, citing Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009).  The court added that in some cases, "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."  Id.

Defendant here urged the Court to distinguish Davidson on grounds that in that case, plaintiff's complaint alleged she still desired to purchase the product in the future and would do so if the product was flushable as represented.  Here, on the other hand, because there are no allegations whatsoever that either Plaintiff has any desire to undergo Ultherapy again, Defendant contends there is no basis for finding the standing necessary to pursue injunctive relief.

///

17

1     On November 3, 2017, a petition for rehearing en banc was filed as to the

2     Davidson decision discussed above, and on May 9, 2018, an Amended Opinion was

3     filed despite the fact that rehearing itself was denied and the substance of the court's

4     earlier decision remained essentially unchanged.  The Amended Opinion, entitled

5     Davidson v. Kimberly-Clark Corp., 889 F.3d 956 (9th Cir. 2018) did, however, make

6     further observations that underscore the validity of the distinction urged by Defendant

7     between this case and the facts of Davidson.  While those portions of the earlier decision

8     discussed above were reiterated without alteration, the Amended Opinion includes

9     certain additional explication not contained previously.  Footnote 5, for example, which is

10    inserted immediately after the court's discussion of the future harm that can result from

11    continued false advertising, addresses decisions from other circuits holding that a

12    previously deceived consumer lacks standing to seek injunctive relief.  The Amended

13    Opinion specifically distinguished those cases, however, finding that unlike Davidson, in

14    those cases the plaintiff did not "sufficiently allege their intention to repurchase the

15    product at issue as Davidson does here."  Id. at 970, n.5.[9]  Moreover, with regard to

16    whether Ms. Davidson had alleged a potential injury that was sufficiently "concrete and

17    particularized" to confer standing, the court again turned to "Davidson's allegations that

18    she would purchase truly flushable wipes. . . if it were possible" to find that her injury was

19    real and not merely abstract.  Id. at 971.  Here, in the absence of any such plausible

20    allegations that either Plaintiff would undergo Ultherapy again under any circumstances,

21    the Court must find that standing to seek injunctive relief is absent.  While Plaintiffs

22    assert, by way of their opposition to Defendant's Motion, that they "could foreseeably

23    choose to undergo an Ultherapy procedure in the future" (Pls.' Opp., 19:13-14), the fact

24    remains that Plaintiffs' complaint as currently constituted makes no such allegations, let

25    ///

26

27    [9] It should also be noted that in Otero v. Zeltiq Aesthetics, Inc., supra, the Central District also
      relied on the fact that plaintiffs there "alleged they would like to purchase the product again in the future"
28    as significant in applying the rationale of Davidson and determining that Article III standing to pursue
      injunctive relief was present.  2017 WL 9538711 at *4,

alone allegations that are sufficiently plausible to support standing.  Absent such allegations the request for injunctive relief necessarily fails.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No 12) is DENIED, except for Defendant's request that the injunctive relief allegations be stricken from Plaintiffs' Complaint, which is GRANTED.  Plaintiffs may file an amended complaint, should they wish to do so, not later than twenty (20) days following the date this Memorandum and Order is electronically filed.  Failure to file an amended pleading within those parameters will cause the Court to determine, without any further notice, that any request for injunctive relief herein has been abandoned.

IT IS SO ORDERED.

Dated:  August 16, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE